IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| EX REL. KENNETH W. ABBOTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:09-cv-01193 |
| v. | § | |
| | § | |
| BP EXPLORATION AND PRODUCTION | § | JURY DEMANDED |
| INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

**MOTION OF DEFENDANTS BP EXPLORATION AND PRODUCTION INC.
AND BP AMERICA INC. TO DISMISS PLAINTIFF'S COMPLAINT
AND MEMORANDUM OF LAW IN SUPPORT**

FULBRIGHT & JAWORSKI L.L.P.
  Otway B. Denny
  Daniel M. McClure
  Anne M. Rodgers
  Peter A. Stokes
  Chris Watt
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone:  (713) 651-5588
Facsimile:  (713) 651-5246

  L. Poe Leggette
370 17th Street, Suite 2150
Denver, Colorado 80202-5638
Telephone:  (303) 801-2700
Facsimile:  (303) 801-2777

ATTORNEYS FOR BP EXPLORATION
AND PRODUCTION, INC. AND
BP AMERICA INC.

90111955

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

SUMMARY OF THE ARGUMENT ......................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING.................................................................... 2

ISSUES TO BE RULED UPON AND STANDARD OF REVIEW ......................................... 3

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT AND AUTHORITIES........................................................................................ 5

I.  Abbott's Claims Should be Dismissed Under Rule 12(b)(6) Because He Has Not Stated a Claim for Violation of the False Claims Act ....................................................... 5

    A.  Abbott Has Not Pleaded a False Claim for Money or Property Under FCA Sections 3729(a)(1) or (2)...................................................................................... 7

        1.  The Alleged False Certifications Did Not Involve a Request for Money ........................................................................................................ 7

        2.  The Alleged False Certifications Did Not Involve a Request for "Property" ................................................................................................. 8

        3.  The Alleged False Statements Were Not Material to a Claim................. 10

    B.  Abbott Fails to Plead a "Reverse" False Claim Under FCA Section 3729(a)(7) ........................................................................................................ 11

II.  Alternatively, Abbott's Complaint Should Be Dismissed Under Rule 9(b) Because His FCA Claims Have Not Been Pled with Specificity.................................................. 13

CONCLUSION........................................................................................................................ 15

CERTIFICATE OF FILING AND SERVICE ........................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
    291 F.3d 336 (5th Cir. 2002) ........................................................3

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009).........................................................13, 15

*United States ex rel. Bain v. Ga. Gulf Corp.*,
    386 F.3d 648 (5th Cir. 2004) ...................................................6, 12

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ...................................................3, 4

*United States ex rel. Digiovanni v. St. Joseph's Candler Health Sys.*,
    No. CV404-190, 2008 WL 395012 (S.D. Ga. Feb. 8, 2008) .............................7

*United States ex rel. Doe v. Dow Chem. Co.*,
    343 F.3d 325 (5th Cir. 2003) ........................................................13

*United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*,
    No. EP-07-cv-247-PRM, 2010 WL 1645971 (W.D. Tex. Mar. 31, 2010) .........................6

*United States ex rel. Graves v. ITT Educ. Servs., Inc.*,
    284 F. Supp. 2d 487 (S.D. Tex. 2003) ...................................................12

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ...................................................6, 7, 8

*United States ex rel. Hopper v. Anton*,
    91 F.3d 1261 (9th Cir. 1996) ........................................................6

*Hopper v. Solvay Pharms., Inc.*,
    588 F.3d 1318 (11th Cir. 2009) ........................................................6

*United States ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods., Inc.*,
    370 F. Supp. 2d 993 (N.D. Cal. 2005) ...................................................12

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ........................................................3

*United States ex rel. Longhi v. United States.*,
    575 F.3d 458 (5th Cir. 2009) ........................................................7

*United States ex rel. Marcy v. Rowan Cos., Inc.*,
    520 F.3d 384 (5th Cir. 2008) ...................................................................9, 10, 11, 12

*United States ex rel. Marlar v. BWXT Y-12, L.L.C.*,
    525 F.3d 439 (6th Cir. 2008) ...................................................................14

*Mobil Oil Exploration & Producing Southeast, Inc. v. United States*,
    530 U.S. 604 (2000)...................................................................10

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.*,
    553 F.3d 869 (5th Cir. 2008) ...................................................................13

*Rios v. City of Del Rio, Tex.*,
    444 F.3d 417 (5th Cir. 2006) ...................................................................3

*United States ex rel. Sanders v. N. Am. Bus Indus., Inc.*,
    546 F.3d 288 (4th Cir. 2008) ...................................................................8

*United States ex rel. Shurick v. Boeing Co.*,
    330 F. App'x. 781 (11th Cir. 2009) ...................................................................14

*United States ex rel. Stebner v. Stewart & Stevenson Servs., Inc.*,
    305 F. Supp. 2d 694 (S.D. Tex. 2004), *aff'd*, 144 F. App'x. 389 (5th Cir. 2005) ..............6

*Sullivan v. Leor Energy, LLC*,
    600 F.3d 542 (5th Cir. 2010) ...................................................................3

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ...................................................................13, 14

*Union Oil Co. of Cal. v. Morton*,
    512 F.2d 743 (9th Cir. 1975) ...................................................................8, 9, 10

*United States v. McNinch*,
    356 U.S. 595 (1958)...................................................................7

*United States v. Q Int'l Courier, Inc.*,
    131 F.3d 770 (8th Cir. 1997) ...................................................................12

*United States v. Rivera*,
    55 F.3d 703 (1st Cir. 1995)...................................................................7

*United States ex rel. Willard v. Humana Health Plan of Texas Inc.*,
    336 F.3d 375 (5th Cir. 2003) ...................................................................6, 8, 11

*Williams v. Travelers Ins. Co.*,
    99 F.3d 1135 (5th Cir. 1996) ...................................................................4

**RULES AND STATUTES**

31 U.S.C. § 3729(a)(1)............................................................................................5, 7

31 U.S.C. § 3729(a)(2).........................................................................................5, 9, 11

31 U.S.C. § 3729(a)(7)......................................................................................6, 9, 11, 12

31 U.S.C. § 3729(c)...............................................................................................6, 7

43 U.S.C. § 1334(b)............................................................................................10, 11

43 U.S.C. § 1334(d).............................................................................................9, 10

43 U.S.C. § 1337(b)(4)........................................................................................4, 8, 9

43 U.S.C. § 1337(o)............................................................................................4, 5

43 U.S.C. § 1350.................................................................................................11

**OTHER AUTHORITIES**

30 C.F.R. § 202.52..............................................................................................12

30 C.F.R. § 250.914(a).........................................................................................15

30 C.F.R. § 250.918.............................................................................................15

Defendants BP Exploration and Production Inc. and BP America Inc. (collectively "BP") move to dismiss the complaint of relator Kenneth W. Abbott ("Abbott") under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## SUMMARY OF THE ARGUMENT

Abbott – a self-proclaimed whistleblower – brings this suit under the False Claims Act ("FCA").  But this lawsuit is the proverbial square peg trying to fit into a round hole, because Abbott lacks the "claim" needed to make a False Claims Act case.  The FCA is not an all-purpose anti-fraud statute, and it does not cover every regulatory violation or alleged misstatement to the Government.  Rather, the FCA covers only fraud material to a "***claim*** for payment" or "to get a . . . ***claim*** paid," and defines a "***claim***" as a "request for money or property."

Abbott has no such fraudulent claim.  This fundamental – and fatal – flaw in his lawsuit unavoidably follows from his own telling of the Atlantis story, which begins with oil and gas leases BP acquired from the government fifteen years ago.  Those leases give BP the right to produce oil and gas from the property.  Abbott does not allege that BP violated the FCA to obtain the leases in 1995.

Instead, Abbott's theory is that BP, long after it acquired the leases, knowingly made false certifications to the Interior Department to obtain the right to produce oil from the leases through the Atlantis facility starting in October 2007.[1]   Therefore, he asserts, BP made a

---

[1] Consistent with the rules of procedure, this motion credits Abbott's factual allegations as true.  As a matter of fact, however, Abbott's essential allegations are neither true nor accurate.  Abbott, who admits his only knowledge comes from working for a contractor at the BP Atlantis project's administrative offices for less than six months beginning in 2008, manufactures his lawsuit from whole cloth – an incomplete document listing that he improperly took with him when he left BP, which he either misunderstands or mischaracterizes.  But this case should never make it to the stage that Abbott's lawsuit fails because his allegations are untrue, because as is evident from this motion, Abbott has no FCA claim.

fraudulent "claim" to receive money or property from the government, or to avoid "an obligation" to pay money to the government, in violation of the FCA.

As a matter of law, however, the United States gave BP the right to produce oil when it granted the leases to BP in 1995.  Thus, BP received the property right to produce oil more than a decade before the statements Abbott alleges were made.  Even assuming Abbott is correct that BP violated a regulation, any alleged violation might lead only to later enforcement action; it would not constitute a "claim" under the FCA.  Abbott fails to allege any statement by BP that could have constituted any material "claim" for money or property or that avoided "an obligation" to pay money, and thus he fails to state a claim under the FCA.

## NATURE AND STAGE OF THE PROCEEDING

This suit was filed under seal pursuant to the FCA, 31 U.S.C. § 3729 *et seq.*, on April 29, 2009.  Docket Entry ("D.E.") 1.  Nine months later, Abbott filed an unopposed motion to dismiss without prejudice, D.E. 7, which the Court granted on January 12, 2010.  D.E. 8.  The United States then consented to the dismissal, provided that it was with prejudice as to Abbott, stating that "the United States believes this dismissal is in the public interest."  D.E. 9.  Accordingly, the Court dismissed the case with prejudice as to Abbott and without prejudice as to the United States on January 14, 2010.  D.E. 10.

Four months later on May 13, 2010, offering no explanation for his delay, Abbott filed a Rule 60(b) motion to set aside the Court's January 12 and 14 orders, claiming they were inconsistent.  D.E. 13.  The Court then vacated its dismissal orders of January 12 and 14, D.E. 18, unsealed the entire record, and authorized Abbott to initiate service of process.  D.E. 19. The United States has not intervened in this suit.

## ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

1.      Whether Abbott's complaint should be dismissed under Rule 12(b)(6) for failure to state a claim because it does not state a cause of action for a violation of the FCA.

2.      Whether Abbott's complaint should be dismissed under Rule 9(b) because it does not plead Abbott's FCA claims with specificity.

Dismissal for failure to state a claim upon which relief may be granted is proper under Federal Rule of Civil Procedure 12(b)(6) "'if the complaint lacks an allegation regarding a required element necessary to obtain relief.'" *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006) (citation omitted). "The court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint." *Id.* (citation omitted). Moreover, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Id.* (citations omitted).

Federal Rule of Civil Procedure 9(b) further requires that "[t]o plead fraud adequately, the plaintiff must 'specify the statement contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

## STATEMENT OF FACTS

Effective July 1, 1995, the Department of the Interior issued to BP five Outer Continental Shelf ("OCS") leases.[2]  Like all leases under the OCS Lands Act, BP's leases "entitle the lessee

---

[2]  *See* Exhibits 1-5, the five leases at issue, attached to this Motion.  Abbott alleges that BP's rights to produce oil and gas from the Atlantis Field derive from these five leases on Green Canyon Blocks 699, 700, 742, 743, and 744. *See*, *e.g.*, D.E. 1 ¶¶ 14, 20.  The leases are all referred to in and central to Abbott's complaint and may be considered in connection with a motion to dismiss without converting the motion into one for summary judgment.  "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  Because the documents are deemed to be part of the pleadings, a court may consider the substance of the documents to determine whether the plaintiff's claims can survive a motion to dismiss.  *In re Katrina Canal*

to explore, develop, and ***produce the oil*** and gas contained within the lease area."  43 U.S.C. § 1337(b)(4) (emphasis added).[3]  Pursuant to the leases and beginning in 2007, BP has produced oil and gas through the Atlantis facility, which is a floating production platform located near the leases.[4]

Both the lease form and OCS Lands Act provide that the United States may cancel any lease "obtained by fraud or misrepresentation."  *See, e.g.*, Exhibit 1, Section 23; 43 U.S.C. § 1337(o).  The United States, thus, can recover the exclusive right to produce oil and gas that it has transferred to its lessee.  Abbott does not base his allegations on any claim that BP obtained the leases fraudulently.

Instead, Abbott asserts that BP submitted "false certifications" to obtain what he terms the "production rights" for the leases.  *Id.* ¶¶ 14-18.  The "false certification" is that BP "did not have complete 'as built' documents for the subsea aspects of the BP Atlantis project, including such critical systems as Piping and Instrument Diagrams (P&IDs), mechanical, controls, and installation engineering documents."  *Id.* ¶¶ 33, 45.  Thus, his argument is that BP did not have the proper documentation when it began production in 2007, and improperly obtained permits to install the Atlantis platform and start production.  But Abbott does not allege which "as built" documents were required for any specific certification made to the Government at any specific time.

---

*Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("we may consider the terms of the contracts in assessing the motions to dismiss") (citing *Causey*, 394 F.3d at 288); *Williams v. Travelers Ins. Co.*, 99 F.3d 1135 (5th Cir. 1996) (per curiam) (the court could consider plaintiff's personnel file referenced in her complaint to ascertain that she "cannot possibly prevail on her theory").

[3] Specifically, the granting clause in BP's leases granting it production rights provides:  "The Lessor [United States] herby grants and leases to the Lessee [BP] the exclusive right and privilege to drill for, develop, and produce oil and gas resources . . . in the submerged lands of the outer Continental Shelf . . . described as follows . . . ."  *See, e.g.*, Exhibit 1.

[4] The Complaint asserts that production began in October or November 2007.  *See* D.E. 1 ¶ 15 (alleging that production began in November 2007); *id.* ¶ 27 (claiming that production began in October 2007).

All of Abbott's allegations that BP made false certifications that the proper documentation existed are made on "information and belief."  *See id.* ¶ 26.  Abbott's "false certifications" claim is premised entirely on his observations while working for a BP contractor as a "project control supervisor" at the administrative offices of BP's Atlantis project.  *Id.* ¶¶ 25-27.  Abbott admits that he was not involved with the preparation of any of the documents or the certifications or verifications of those documents because those were prepared and filed before he worked at BP.  *Id.* ¶ 26.  Instead, Abbott's allegations are based on his review of a November 2008 spreadsheet that listed documents.  *Id.* ¶¶ 33, 45.  Conspicuously absent is any allegation that Abbott ever saw any of the actual documents listed on the spreadsheet.  BP's contract with Abbott's employer terminated effective February 3, 2009, which ended Abbott's less-than-six month tenure at BP.  *Id.* ¶¶ 25, 53.

## ARGUMENT AND AUTHORITIES

### I.  Abbott's Claims Should be Dismissed Under Rule 12(b)(6) Because He Has Not Stated a Claim for Violation of the False Claims Act

Abbott has not stated a claim under the FCA.  The FCA is not a catch-all remedial statute for any violation of federal regulations or act of fraud.  The pre-2009 version of the FCA provides a cause of action against "[a]ny person" who "(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; [or] (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."[5]  31 U.S.C. § 3729(a)(1), (2).

---

[5] The pre-2009 version of the FCA applies to the conduct at issue in this case.  In May 2009, Congress enacted the Fraud Enforcement and Recovery Act of 2009 ("FERA"), which included amendments to the FCA.  In particular, Congress amended 31 U.S.C. § 3729(a)(2) to replace the words "to get a false or fraudulent claim paid or approved by the Government" with the words "material to a false or fraudulent claim."  Publ. L. No. 111-21, § 4, 123 Stat. 1617, 1621.  While the FERA amendments to the FCA generally applied prospectively to conduct on or after the date of enactment, the amendment to § 3729(a)(2) provided that it "shall take effect as if enacted on June 7, 2008"

Liability under these provisions of the FCA "arises only from the submission of false or fraudulent 'claims.'"  *United States ex rel. Stebner v. Stewart & Stevenson Servs., Inc.*, 305 F. Supp. 2d 694, 698 (S.D. Tex. 2004) (Hoyt, J.), *aff'd*, 144 F. App'x. 389 (5th Cir. 2005).  A "claim" includes "any request or demand, whether under a contract or otherwise, for money or property."  31 U.S.C. § 3729(c).

In addition, Section 3729(a)(7) of the FCA, commonly referred to as a "reverse false claim," imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(7).  "[I]n a reverse false claims suit, the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated."  *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004).  It "does ***not*** extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed."  *Id*. at 657.

The FCA thus does not create liability merely for an alleged "disregard of Government regulations," unless "as a result of such acts, [the defendant] knowingly asks the Government to pay amounts it does not owe."  *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 381 (5th Cir. 2003); *see also United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("Violations of laws, rules, or regulations alone do not create a cause of action under the [FCA].").  "The Supreme Court has cautioned that the False Claims Act was not designed to punish every type of fraud committed upon the government."  *Harrison v.*

---

with respect to alleged "claims" pending on or after that date.  *Id*. at 1625.  Because the alleged "claims" here were made before BP began production in late 2007, the amended language does not apply.  *See, e.g.*, *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1327 n.3 (11th Cir. 2009); *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, No. EP-07-cv-247-PRM, 2010 WL 1645971, at *8-9 (W.D. Tex. Mar. 31, 2010).  Even if it did apply, the amended language would not affect the result of this motion.

*Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) (citing *United States v. McNinch*, 356 U.S. 595, 599 (1958)).   The statute "'attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment.'" *See United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)).

### A.   Abbott Has Not Pleaded a False Claim for Money or Property Under FCA Sections 3729(a)(1) or (2)

A fundamental element of an FCA cause of action is that there be a "claim" – a request for money or property as defined in FCA Section 3729(c).   Abbott fails to plead the existence of a "false or fraudulent claim" for payment as required to state a cause of action under 31 U.S.C. § 3729(a)(1) and (2).   A "claim" must be a "request or demand" for "money or property." 31 U.S.C. § 3729(c).   As set forth below, Abbott identifies no "request" by BP for "money" or "property" within the meaning of Section 3729(c).

### 1.   The Alleged False Certifications Did Not Involve a Request for Money

Abbott does not and cannot assert that any of the purportedly false "statements" and "certifications" alleged in the Complaint was a request for money, a "claim for payment," or a "statement to get a . . . claim paid."   There was no request or demand for money connected with these alleged statements.   At most, the alleged statements were made to obtain regulatory approvals regarding the construction of the Atlantis facility.

The FCA "at least requires the presence of a claim–a call upon the government fisc–for liability to attach."   *Harrison*, 176 F.3d at 785.   The government "fisc" is the U.S. Treasury. *United States ex rel. Digiovanni v. St. Joseph's Candler Health Sys.*, No. CV404-190, 2008 WL 395012, at *5 n.4 (S.D. Ga. Feb. 8, 2008).   The alleged "claim" must call "the government to pay

out money or to forfeit money due." *United States ex rel. Sanders v. N. Am. Bus Indus., Inc.*, 546 F.3d 288, 299 (4th Cir. 2008) (quoting *Harrison*, 352 F.3d at 913)).

Simply put, there is no allegation BP made any request on the Government to "pay out money or to forfeit money due" or otherwise made a "call on the government fisc."  Merely asserting that BP failed to comply with regulations in its platform application does not show that the Government was requested to pay money or forfeit money due.  *See United States ex rel. Willard*, 336 F.3d at 381 (no FCA liability for mere alleged "disregard of Government regulations").

### 2.     The Alleged False Certifications Did Not Involve a Request for "Property"

Abbott appears to assert that BP made a false claim for "production rights" under the leases.  *See* D.E. 1 ¶¶ 17-18, 24 & 26.  Abbott's theory is that, some time before his work as a contractor at BP in 2008, BP made knowingly false certifications to the Interior Department to obtain "production rights" to produce oil through the Atlantis facility starting in October 2007. *Id.*  Abbott's claims fail because BP obtained the right to produce oil from the leases fifteen years ago when it acquired the leases from the Government.  *See* 43 U.S.C. § 1337(b)(4) (leases "entitle the lessee to explore, develop, and ***produce the oil*** and gas contained within the lease area") (emphasis added).

Abbott confuses the government's two roles in offshore oil and gas leasing and production.  Under the OCS Lands Act, "Congress intended to exercise both proprietary powers of a landowner and the police powers of a legislature in regulating leases."  *Union Oil Co. of Cal. v. Morton*, 512 F.2d 743, 747 (9th Cir. 1975).  As a proprietor, the United States gave BP property rights in the leases, but BP's activities with respect to those property rights are subject

to the Interior Department's regulatory power.[6]  If BP fails to comply with the rules, the Interior Department has the discretion to seek several remedies or no remedy at all.  But BP's property rights do not terminate automatically if a subsequent rule violation occurs.  Producing leases like those here can be cancelled only by a court at the Interior Department's request.  43 U.S.C. § 1334(d).

Similarly, in *United States ex rel. Marcy v. Rowan Cos., Inc.*, 520 F.3d 384 (5th Cir. 2008), the relator alleged that various oil and gas companies violated the FCA by fraudulently omitting information about alleged discharges of hazardous waste from OCS oil and gas leases in reports they were required to file with the Government.  *Id.* at 387.  Specifically, the relator claimed the defendants "fraudulently maintained their right to take government property under the lease by failing to report their violations of certain laws and regulations."  *Id.* at 389.  The court observed that the leases did not terminate automatically upon a violation.  "[C]ancellation is only an option; nothing in the lease requires cancellation."  *Id.*  Marcy failed to state a claim because "the environmental requirements [allegedly violated] . . . were not prerequisites to continuation of the lease."  *Id.* at 390 (as to claim under § 3729(a)(2)); s*ee also id.* at 391 (same reasoning as to § 3729(a)(7)).

Similarly here, BP received the right to produce when it received the leases, 43 U.S.C. § 1337(b)(4), but it holds those rights subject to the Interior Department's exercise of police-power regulation.  Likewise, a landowner onshore may own the land in fee simple, but it is still subject to the county's police power to regulate the construction of a house.  Both BP and the landowner may apply for regulatory permits.  In Abbott's view, what they really seek is a species of property called, respectively, "production rights" and "dwelling rights."

---

[6] *See Union Oil Co. of Cal. v. Morton*, 512 F.2d at 747-48 (explaining the Government's dual role in exercising the proprietary powers of a landowner to issue leases and the police powers of a government in regulating leases of publicly owned resources).

Abbott's view, however, is mistaken as a matter of law.  BP's leases gave it property rights, not merely an exclusive right to file for permits.  *See, e.g., Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 620 (2000) ("[T]he lease contracts gave the companies more than rights to obtain approvals.  They also gave the companies rights to explore for, and to develop, oil.").  To the extent regulations are incorporated into the leases by the statutory provision on which Abbott relies, "those regulations are ones whose violation is a ***condition subsequent rendering the lease voidable***."  *Union Oil Co. of Cal. v. Morton*, 512 F.2d at 749 (emphasis added).

Abbott's cause of action fails because it is entirely dependent on the legal theory that BP lacked "production rights" altogether, until BP satisfied the "conditions precedent" of obtaining all required permits.  As shown above, the law is to the contrary.  The permits are not prerequisites to BP's having the property right to produce oil.  *Mobil Oil*, 530 U.S. at 620.  As in *Marcy*, therefore, compliance with the regulations here is not a prerequisite to obtaining the right to produce oil.

If BP had failed to follow a regulation, then at worst it may be subject to enforcement action, and if Interior and a court think the breach serious enough, a judicial cancellation of the leases.  43 U.S.C. § 1334(d).  But the Complaint does not plead the leases have been cancelled.  Nor does it even plead that the Interior Department has determined that any rules have been violated.  Thus, there can be no argument that BP obtained "property" through false statements.

### 3.    The Alleged False Statements Were Not Material to a Claim

Abbott additionally fails to state an FCA claim because *Marcy* forecloses Abbott's argument that 43 U.S.C. § 1334 elevates BP's alleged regulatory noncompliance into an actionable material claim.  *See* D.E. 1 ¶ 72.  *Marcy* held that materiality is a requirement for any claim to violate the FCA.  *Marcy*, 520 U.S. 3d. at 389.  Section 1334(b) states that "[t]he issuance

and continuance in effect of any lease . . . under the provisions of this subchapter shall be conditioned upon compliance with regulations issued under this subchapter." 43 U.S.C. § 1334(b). Given that the leases were issued in 1995, Abbott cannot and does not claim that their issuance was caused by a false claim. Nor would a regulatory violation after issuance of the leases be material to a claim.

The Fifth Circuit in *Marcy* specifically rejected the argument that the Government's right to cancel an oil or gas lease transforms an alleged regulatory violation into an FCA violation. *See Marcy*, 520 F.3d at 389-90. Like Abbott, the relator in *Marcy* argued that allegedly false regulatory reports were material to a "claim" because the Government had the right to cancel the defendants' leases. *See id.* at 389. Rejecting this argument, the Fifth Circuit held that cancellation "is only an option," and that the allegedly false regulatory report was not material to a claim. *Id.* at 389-90 ("Because the environmental requirements that Marcy references were not prerequisites to continuation of the lease, Marcy fails to state a claim under Section 3729(a)(2)."); *see also Willard*, 336 F.3d at 381 (allegations must "show that [the government] **conditioned its payment** to Humana on any implied certification of compliance").

Similarly here, while the Government has the option to cancel or suspend a lease or seek civil or criminal penalties based on noncompliance with regulations, it is not required to do so. *See* 43 U.S.C. § 1350. *Marcy* thus controls this case and requires dismissal.

**B.     Abbott Fails to Plead a "Reverse" False Claim Under FCA Section 3729(a)(7)**

Abbott also fails to allege a "reverse false claim" under Section 3729(a)(7). Section 3729(a)(7) imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7).

The Complaint wholly fails to allege any false statement made to "decrease any obligation [by BP] to pay" any amount of money to the Government.  Because BP's leases are producing oil and gas, BP's only monetary obligation is to pay the Government the 12.5% royalty rate set out in the leases.  *See* Section 6 of the Leases, Exhibits 1-5 and 30 C.F.R. § 202.52 ("Royalties on oil, gas . . . shall be at the royalty rate specified in the lease.").  There is no allegation that BP has paid the Government less than its full royalty percentage.  And, as a matter of law, BP has no obligation to pay the Government 100% of the proceeds of production from the wells under the leases.

Moreover, Section 3729(a) "does ***not*** extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed."  *Bain*, 386 F.3d at 657.  An allegation that BP made false statements to avoid possible regulatory or statutory penalties thus would not state a claim under Section 3729(a).  *Id.*; *Marcy*, 520 F.3d at 391 (avoidance of "potential or contingent" obligation to pay fines does not give rise to reverse-FCA claim); *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773-74 (8th Cir. 1997) (false statement to avoid potential fines or penalties not actionable under reverse-FCA); *United States ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods., Inc.*, 370 F. Supp. 2d 993, 1000 (N.D. Cal. 2005) ("potential obligations–fines, penalties and the like–that are contingent upon the exercise of some discretion or intervening act by the government are not properly the subject of a suit under [Section 3729(a)(7)]"); *United States ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 508 (S.D. Tex. 2003) ("a government contractor's potential liability for fines or sanctions that might be imposed at some indefinite point in the future, in some indefinite amount, is not an 'obligation to pay' under section 3729(a)(7)").

Accordingly, Abbott fails to assert a claim under Section 3729(a)(7) as a matter of law.

## II.    Alternatively, Abbott's Complaint Should Be Dismissed Under Rule 9(B) Because His FCA Claims Have Not Been Pled with Specificity

Rule 9(b) applies with full force to FCA cases.  *See, e.g., United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008) ("Because the linchpin of an FCA claim is a false claim, 'the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby"' must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b).'") (quoting *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 328 (5th Cir. 2003)).  A plaintiff must state the factual basis for the fraudulent claim with particularity and cannot rely on speculation or conclusory allegations.  *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).  Even in a regular non-heightened Rule 8 "notice pleading" case, the complaint must still possess enough factual "heft" to "'show[]'" that "the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

Abbott's complaint violates Rule 9(b) in virtually every respect (and does not even satisfy Rule 8).  There is no allegation of who prepared the alleged false certifications or statements, when (if ever) such statements were supposedly provided to the Government, or the contents of the alleged false statements.  While the Complaint generally alleges that BP did not possess sufficient numbers of "as built" documents during Abbott's employment in late 2008 and early 2009, the Complaint fails to identify which "as built" documents were needed to make any specific certifications to the Government to obtain "production rights," what "as built" documents were actually provided to the Government (or when they were provided), let alone whether any false certifications were specifically presented to the Government regarding the "as built" documents.  In fact, Abbott openly admits that BP did have hundreds of "approved for design," "approved for construction," and "as built" documents in its database. *See* D.E. 1 ¶¶ 45,

54, 60.   The Complaint wholly fails to allege whether BP failed to maintain any specific document that was required to make any specific certification at any specific time in return for any payment of money or property.

Moreover, in direct violation of *Thompson*'s command that a party cannot rely on "speculation" to survive dismissal, Abbott's entire claim is admittedly based on "information and belief" regarding actions occurring long before his employment at BP, over which he has no personal knowledge.   *See, e.g.,* D.E. 1 ¶ 25.   These speculative allegations are plainly insufficient.   *See United States ex rel. Thompson*, 125 F.3d at 903 (affirming dismissal where relator "provided no factual basis for his belief that defendants submitted claims for medically unnecessary services other than his reference to statistical studies" and merely engaged in "speculation" that defendants made false claims); *United States ex rel. Shurick v. Boeing Co.*, 330 F. App'x. 781, 784 (11th Cir. 2009) (dismissing complaint where relator "lacks personal knowledge of the [allegedly false] invoices and fails to allege facts that establish that invoices were actually submitted to the government"); *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445-46 (6th Cir. 2008) (rejecting 'information and belief' allegations and affirming dismissal where relator "does not allege personal knowledge of the procedures through which BWXT compiled its Completion Forms, self-evaluation, or monthly reports that BWXT submitted to DOE.  [The relator] also fails to allege concrete facts, rather than inferences based '[o]n information and belief,' to establish that fraudulent claims were in fact, once compiled, submitted to the government.   She has not provided dates on which the purportedly false certifications were submitted, nor has she alleged who submitted the purportedly false certifications, nor has she alleged any other 'specific information about the [certifications] allegedly submitted.'").

Abbott also asserts claims based on alleged "verifications" by an unnamed "Certified Verification Agent (CVA) nominated by the company at the design, fabrication, and installation stages of the program." *See* D.E. 1 ¶¶ 62-66.  The Complaint again wholly fails to identify any specific "verification," the name of the person who made the verification, when such verifications were made, or the actual contents of any alleged verifications. *See id.*  Moreover, a CVA is not a BP official, but is an independent expert approved by the Interior Department. 30 C.F.R. §§ 250.914(a) & 250.918.  There is no allegation of any false statement by BP.  Abbott alleges no facts showing how any alleged CVA "verification" gives rise to a False Claims Act claim against BP and fails to plead this claim with particularity.

Abbott's allegations thus come nowhere close to satisfying Rule 9(b).  Indeed, there is no allegation sufficient under *Iqbal* to "show" that BP made *any* false statements, let alone particularized allegations showing any specific false certifications by any specific person at any specific time for purposes of obtaining any money or property from the Government.  The case fails on the pleadings and should be dismissed.

## CONCLUSION

For the reasons set forth above, BP prays that the Court dismiss this action in its entirety, with prejudice as to the Relator Abbott, and without prejudice as to the United States, and award BP all other relief that is just and proper.

Dated:  July 22, 2010.

Respectfully submitted,

_____/s/ *Otway B. Denny*_____
Otway B. Denny
State Bar No. 05755500
Federal I.D. No. 4120
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone:  (713) 651-5588
Facsimile:  (713) 651-5246

**ATTORNEY-IN-CHARGE FOR
BP EXPLORATION AND PRODUCTION,
INC. AND BP AMERICA INC.**

Of Counsel:
FULBRIGHT & JAWORSKI L.L.P.

Daniel M. McClure
State Bar No. 13427400
Federal I.D. No. 1726
Anne M. Rodgers
State Bar No. 17133025
Federal I.D. No. 12576
Peter A. Stokes
State Bar No. 24028017
Federal ID No. 29636
Chris Watt
State Bar No. 24033314
Federal I.D. No. 32149
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

L. Poe Leggette
370 17th Street, Suite 2150
Denver, Colorado 80202-5638
Telephone:  (303) 801-2700
Facsimile:  (303) 801-2777

90111955

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 22, 2010, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all registered counsel of record listed below:

> Rachel Gail Candelet rcandelet@wgclawfirm.com
> Watts Guerra & Craft, L.L.P.
>
> David L. Perry dlperry@perryhaas.com
> Perry Haas PC
>
> Jill Ondrejko Venezia jill.venezia@usdoj.gov
> Assistant United States Attorney

I also caused to be served a copy of the foregoing document by U.S. mail addressed to each of the following counsel who are not ECF registered counsel listed of record:

> Joyce Branda
> United States Department of Justice
> P.O. Box 261
> Washington, D.C. 20044
>
> John Hunter Craft
> Watts Guerra Craft L.L.P.
> 2402 Dunlavy St., Suite 300
> Houston, TX  77006
>
> Mikal C. Watts
> Emily C. Jeffcott
> Watts Guerra Craft L.L.P.
> Four Dominion Drive
> Building Three, Suite 100
> San Antonio, TX 78257
>
> Rene M. Haas
> Perry and Haas
> P.O. Box 1500
> Corpus Christi, TX 78403-1500

> _/s/ Otway B. Denny_____
> Otway B. Denny