IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON, DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, EX REL. KENNETH W. ABBOTT, ET AL., | § § § | |
| Plaintiffs, | § § | Civil Action No. 4:09-cv-01193 |
| v. | § § | Jury Trial Requested |
| BP EXPLORATION AND PRODUCTION, INC., ET AL., | § § § | |
| Defendants. | § § | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE THE REPORT AND TESTIMONY OF PLAINTIFFS' PROPOSED EXPERT MARC STEINBERG

**WATTS GUERRA CRAFT, LLP**
Mikal Watts
J. Hunter Craft
Four Dominion Drive
Bldg. 3, Suite 100
San Antonio, Texas 78257
Telephone: (210) 447-0500
Facsimile: (210) 447-0501

Christopher V. Goodpastor
811 Barton Springs Road
Ste. 725
Austin, Texas 78704
Telephone: (512) 479-0500
Facsimile: (512) 479-0502

**PERRY & HAAS**
David L. Perry
René Haas
P.O. Box 1500
Corpus Christi, Texas 78403
Telephone: (361) 880-7500
Facsimile: (361) 887-9507

*Attorneys for Plaintiffs*

NATURE AND STAGE OF PROCEEDING.................................................................1

STATEMENT OF ISSUES AND STANDARD OF REVIEW..................................1

SUMMARY OF ARGUMENT...................................................................................2

ARGUMENT AND AUTHORITIES..........................................................................3

I.  STEINBERG'S OPINIONS ARE RELEVANT TO DISPUTED ISSUES ...................3

    A.  Steinberg's Opinion Testimony Is Relevant to Defendants' Separate and Independent Liability for Knowingly Causing False Claims to Be Presented to the Government. .......................................................................3

    B.  Steinberg's Opinion Testimony Is Relevant to Plaintiffs' Effort to Attribute the Acts, Knowledge, and Statements of Each Defendant to Other Defendants ...........................................................................................5

        1.  Defendants' Stipulation Does Not Address All Consequences of a Finding of Alter Ego ...............................................5

        2.  The Court's Prior Orders Contemplate Alter Ego Discovery and Do Not Moot Plaintiffs' Alter Ego Claims....................................6

    C.  Defendants Should Not Be Permitted to Use Their Stipulation to Indemnify BP E&P to Obtain a De Facto and Improper Summary Judgment on Certain Claims Asserted by Plaintiffs......................................8

II.  PROFESSOR STEINBERG'S OPINIONS ARE INTENDED TO ASSIST THE JURY IN ASSESSING FACT QUESTIONS REGARING ALTER EGO AND DEFENDANTS' LIABILITY UNDER THE FCA FOR CAUSING FALSE CLAIMS TO BE MADE TO THE GOVERNMENT .......................................9

    A.  Alter Ego Issues are Fact Questions to be Determined by the Jury; Expert Opinion Regarding the Interrelationship of the BP Entities Will Assist the Jury in Making that Determination .......................................9

    B.  Professor Steinberg's Assumption that BP Exploration was Inadequately Capitalized is Supported by Some Evidence and That Facet of His Analysis Addresses Only One of the Many Alter Ego Factors Applicable in this Circuit ..................................................................14

III.  PROFESSOR STEINBERG'S RELIANCE UPON DEPOSITIONS DESIGNATED FROM MDL 2179 IS PROPER .........................................................17

CONCLUSION .........................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Baker v. Raymond Int'l, Inc.,*
  656 F.2d 173, 180-81 (5th Cir. 1981) .................................................................................... 10

*Barefoot v. Estelle,*
  463 U.S. 880, 903 (1983) ....................................................................................................... 16

*Bauman v. Centex Corp.,*
  611 F.2d 1115, 1120-21 (5th Cir. 1980) ............................................................................... 10

*Berry v. City of Detroit,*
  25 F.3d 1342, 1350-53 (6th Cir. 1994) ................................................................................. 14

*Bowers v. Norfolk S. Corp.,*
  537 F.Supp.2d 1343, 1368-69 (M.D. Ga. 2007) ................................................................... 16

*BP Products N. Am. Inc. v. Int'l Maint. Corp.,*
  NO. Civ. A. H-03-5218, 2005 WL 5976553 at *2 (S.D. Tex. May 27, 2005) ..................... 12

*Cantiere DiPortovenere Piesse S.p.A. v. Kerwin,*
  739 F.Supp. 231, 238 (E.D. Pa. 1990) ................................................................................. 13

*Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.,*
  No. 99 Civ. 1725 (VM), 2003 WL 1878246 at *5 (S.D.N.Y. Apr. 11, 2003) ................ 12, 13

*Dana Corp. v. American Standard, Inc.,*
  866 F.Supp. 1481, 1501 (N.D. Ind. 1994) ............................................................................ 18

*Daubert v. Merrell Dow Pharms., Inc.,*
  509 U.S. 579, 591 (1993) ................................................................................................... 9, 14

*Dudley v. Smith,*
  504 F.2d 979, 982 (5th Cir. 1974) .......................................................................................... 5

*First Nat'l Bank of Louisville v. Lustig,*
  96 F.3d 1554, 1576 (5th Cir. 1996) ....................................................................................... 18

*GST Telecomms., Inc. v. Irwin,*
  192 F.R.D. 109, 111 (S.D.N.Y. 2000) .................................................................................. 14

*General Elec. Co. v. Joiner,*
  522 U.S. 136, 146 (1997) ....................................................................................................... 15

*In re McKenzie Energy Corp.,*
  228 B.R. 854, 869 (S.D. Tex. Bankr. 1998) ........................................................................... 5

*Klier v. Elf Atochem N. Am., Inc.,*
  658 F.3d 468, 474 (5th Cir. 2011) ........................................................................... 1

*Kuhmo Tire Co., Ltd. v. Carmichael,*
  526 U.S. 137, 152 (1999) ........................................................................................... 1

*Muniz v. Rexnord Corp.,*
  No. 04 C 2405, 2006 WL 5153078 at *2 (N.D. Ill. Nov. 2, 2006) ....................... 17

*Nichols v. American Nat'l Ins.,*
  154 F.3d 875, 883 (8th Cir. 1998) ........................................................................... 14

*Nunez v. Allstate Ins. Co.,*
  604 F.3d 840, 844 (5th Cir. 2010) ............................................................................. 1

*United States ex rel. Gudur v. Deloitte Consulting, LLP,*
  512 F.Supp.2d 920, 945-46 (S.D. Tex. 2007) ......................................................... 16

*United States ex rel. Johnson Pugh Mechanical, Inc. v. Landmark Constr. Corp.,*
  318 F.Supp.2d 1057, 1066-68 (D. Colo. 2004) ...................................................... 13

*United States ex rel. Schmidt v. Zimmer, Inc.,*
  386 F.3d 235, 244-45 (3d Cir. 2004) ......................................................................... 4

*United States v. 14.38 Acres of Land,*
  80 F.3d 1074, 1077 (5th Cir. 1996) ......................................................................... 16

*United States v. Bilzerian,*
  926 F.2d 1285, 1294 (2nd Cir. 1991) ...................................................................... 14

*United States v. Caremark, Inc.,*
  634 F.3d 808, 815 (5th Cir. 2011). ............................................................................ 3

*United States v. Farrell,*
  563 F.3d 364, 377-78 (8th Cir. 2009) ...................................................................... 14

*United States v. Fields,*
  483 F.3d 313, 344 (5th Cir. 2007) ........................................................................... 16

*United States v. Jon-T Chem., Inc.,*
  768 F.2d 686, 691 (5th Cir. 1985) ........................................................................... 10

*United States v. Thevis,*
  665 F.2d 616, 644 n.33 & 645-46 (5th Cir. 1982) .................................................... 5

*United States v. Webb,*
  625 F.2d 709, 711 (5th Cir. 1980) ............................................................................. 9

**STATUTES**

31 U.S.C. § 3729(a)&(b) .................................................................................. 3

**RULES**

FED. R. EVID. 702 ........................................................................................... 9, 15

FED. R. EVID. 702, advisory committee note ..................................................... 15

FED. R. EVID. 703 ........................................................................................... 18

FED. R. EVID. 703, advisory committee note ..................................................... 18

FED. R. EVID. 704 advisory committee's note .................................................... 12

FED. R. EVID. 704(a) ........................................................................................ 12

## NATURE AND STAGE OF PROCEEDING

Discovery in this matter is ongoing and is due to be completed by December 15, 2011. *See Doc. 144.* In compliance with the Court's October 14, 2011 deadline, Plaintiffs designated several expert witnesses in this matter, including Professor Marc Steinberg, who has been designated to testify regarding the corporate relationships among the Defendant entities to assist the jury in determining whether (1) each defendant is liable under the False Claims Act (FCA) for knowingly *causing* false claims to be presented to the Government; (2) the acts and knowledge of each defendant may be attributed to the other defendants; (3) statements and evidence concerning each defendant may be admitted against the other defendants. On November 3, 2011, Defendants filed a motion to strike Professor Steinberg's report and testimony. *See Doc. 200.* By order dated November 7, 2011, the Court expedited the time for Plaintiffs to file their response to that motion; this response is due on or before November 15, 2011. *See Doc. 202.* Docket call in this matter is currently set for March 5, 2012. *See Doc. 144.*

## STATEMENT OF ISSUES AND STANDARDS OF REVIEW

Does the Court abuse its discretion in excluding the report and testimony of an qualified and reliable expert witness when that expert's opinions are directly relevant to crucial proof issues in the case and do not exceed the parameters for expert opinion testimony? The Court's resolution of that question is reviewed under an abuse of discretion standard. *See Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010); *see also Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). An abuse of discretion occurs when the district court's decision is either premised on an application of the law that is erroneous or applies an incorrect legal standard. *See Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011).

## SUMMARY OF THE ARGUMENT

Liberal admissibility of expert opinions recognizes the jury's function as the final arbiters of credibility and weight. Here, Defendants urge the Court to exclude Professor Steinberg's opinions, arguing that the alter ego issue in this case has been mooted by their stipulation and that the opinions he will offer on that subject will not assist the trier of fact. Defendants are incorrect on both counts.

First, Professor Steinberg's opinions concern the interrelationship of the Defendant entities; those opinions are relevant to establishing the liability of those Defendants under the False Claims Act for knowingly causing false claims to be presented to the Government with respect to the Atlantis Platform and to Plaintiffs' claims of alter ego. Although Defendants rely upon their stipulation, the stipulation does not agree to liability under the False Claims Act and Defendants have previously disclaimed any intention to stipulate to any entity being the alter ego of another. Further, a stipulation to joint and several liability addresses only one of at least three consequences stemming from an alter ego finding; it wholly fails to address the ability of a claimant to attribute acts and knowledge to a defendant's alter ego or the use of statements and evidence concerning each alter ego defendant against the others. Thus, Defendants' stipulation does not moot Plaintiffs' claims against Defendants for knowingly causing false claims to be presented to the Government or Plaintiffs' alter ego claims. Defendants' arguments to the contrary are a thinly-veiled effort to use their stipulation to joint and several liability as a mechanism to obtain a de facto summary judgment without the obligation to disprove Plaintiffs' claims.

As a relevant issue in this case, determining whether the Defendants are alter egos of each other is a question for the jury to decide. Professor Steinberg's opinions are clearly germane to that issue and are of a kind that courts have generally recognized to

be helpful to juries in making alter ego determinations. His opinions are amply supported by facts adduced to date pursuant to this Court's discovery orders and are admissible under any applicable test.

## ARGUMENT AND AUTHORITIES

## I. STEINBERG'S OPINIONS ARE RELEVANT TO DISPUTED ISSUES.

BP Defendants argue that Professor Steinberg's report and opinions should be stricken, claiming that those opinions are not relevant to any of the remaining disputed issues in this case because BP p.l.c., BP Products North America, Inc. and BP America, Inc. have agreed to indemnify any judgment against BP E&P. *See Doc. 200* at 3-5. *See Doc. 120*. Defendants are simply wrong. As shown below, the opinions of Professor Steinberg are relevant to Plaintiffs' claims concerning (1) each defendant's knowing assistance in causing the government to pay claims grounded in fraud; and (2) the attribution of acts, knowledge, and statements of each defendant to the other defendants, neither of which are addressed by Defendants' stipulation.

### A. Steinberg's Opinion Testimony Is Relevant to Defendants' Separate and Independent Liability for Knowingly Causing False Claims to Be Presented to the Government.

In addition to imposing liability for making, using, or presenting a false claim, the FCA also imposes liability upon any entity that "*causes to be presented*" a false or fraudulent claim" or "*causes to be made or used*" a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)&(b) (emphasis added). "The FCA applies to anyone who knowingly assists in causing the government to pay claims grounded in fraud, without regard to whether that person has direct contractual relations with the government."[1] Thus, parties that engage in a scheme that is a substantial factor in

---

[1] *United States v. Caremark, Inc.*, 634 F.3d 808, 815 (5th Cir. 2011).

"bringing about" a false claim by another entity are responsible for that false claim under the FCA.[2]

Plaintiffs have sued all Defendants for their participation in the fraudulent scheme, making *separate claims* under the FCA against BP p.l.c. (the ultimate parent), BP America, and BP Products for their conduct in making false claims and **causing** false claims to be made to fraudulently obtain federally owned oil and gas under the Atlantis Field.

Defendants do **not** contend that they have stipulated to liability for any claim under the FCA for knowingly causing false claims to be made to the Government. Defendants' stipulation merely states that BP E&P will be indemnified by the other BP entities for any judgment against BP E&P. That intra-corporate indemnity agreement does not resolve the individual liability of *any* of the Defendants. As a result, Professor Steinberg's opinion testimony and report are directly relevant to issues regarding the assistance of BP plc, BP America, and BP Products in knowingly causing BP E&P to submit false certifications and claims to the United States. In particular, the testimony relates to: (1) assessing the extent of control exercised by each entity (including structural, financial, budgetary, and scheduling control) exercised by each defendant over the other defendants (including BP E&P), *see Doc. 200-1* at 6-16; (2) evidence concerning the use of common employees, officers, and directors, *see id.* at 8-9, 12-15; (3) evidence concerning the use of the same services, common business departments, and functionalities, *see id.* at 7-8, 10-12, 14, 17; and (4) assessing the extent to which the Defendants' operations and property are integrated, *see id.* at 6-8, 10, 12-16. All of these

---

[2] *See e.g., United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 244-45 (3d Cir. 2004) (defendant is liable under the FCA if it created and pursued a scheme "that it knew would, if successful, result in the submission" of false certifications by another).

topics relate to the scheme pursued by Defendants that resulted in Defendants' false certifications to, and fraud upon, the United States and in violation of OCSLA.

Accordingly, this Court should deny Defendants' Motion to Strike because Professor Steinberg's opinion testimony is relevant to disputed issues regarding Plaintiffs' claims under the FCA.

**B.      Steinberg's Opinion Testimony Is Relevant to Plaintiffs' Effort to Attribute the Acts, Knowledge, and Statements of Each Defendant to Other Defendants**

1.      Defendants' Stipulation Does Not Address All Consequences of a Finding of Alter Ego

A jury's finding of alter ego has *three* legal consequences: (1) it allows the attribution of the acts and knowledge of each alter ego defendant to the other alter ego defendants; (2) it allows the admission of statements and evidence concerning each alter ego defendant against the other alter ego defendants; and (3) it creates joint liability among all defendants. *United States v. Thevis*, 665 F.2d 616, 644 n.33 & 645-46 (5th Cir. 1982); *Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir. 1974); *In re McKenzie Energy Corp.*, 228 B.R. 854, 869 (S.D. Tex. Bankr. 1998). For example, in *Thevis*, the Fifth Circuit approved the following jury charge regarding alter ego, stating that if the jury found sufficient evidence

> that the defendant Michael G. Thevis was the alter ego of defendant Global Industries, Inc. as a question of fact, then [the jury] may **attribute the acts and <u>knowledge</u> of defendant Michael G. Thevis to defendant Global Industries, Inc.**

*Thevis*, 665 F.2d at 644 n.33. The Fifth Circuit also held that the statements made by Thevis were admissible in evidence against his alter ego defendant. *Id.* at 645-46.

BP's stipulation, however, addresses only *one* of these consequences -- joint liability. Indeed, during the July 6, 2011 hearing BP's counsel, Ms. Liberato, clearly acknowledged the limit of BP's stipulation and expressly disavowed any intent that the

stipulation be construed to make BP Global, BP America, Inc., or BP Products North America an alter ego of BP Exploration and Production, Inc., explaining:

> And the second thing on stipulating about whether -- about agency and the other stipulations, that's not what we -- we aren't those. **We aren't the alter ego. These companies aren't the alter egos . . . what we have done is say that they are jointly and severally liable.**

*See Tr. 7/6/11 Hrg.* at 34: 2-5, 43:2-5 & 7-8 (emphasis added). The language of the stipulation confirms this position:

> Defendants BP, p.l.c.; BP America Inc.; and BP Products North America Inc., each agree to be *jointly and severally liable with BP Exploration & Production Inc. and each other for any judgment that may be entered on the Amended Complaint against BP Exploration & Production Inc.* in this matter, and further agree that it may be named in the judgment as if directly liable in the same manner and to the same extent as BP Exploration & Production Inc.

*Doc. 120.* The stipulation does *not* agree: (1) that the knowledge of each Defendant may be attributed to other Defendants; or (2) that statements and evidence against one Defendant is admissible against all Defendants. Since each of those is a legal consequence of an alter ego finding, the stipulation does not moot the alter ego issue.

Accordingly, this Court should deny Defendants' Motion to Strike because the opinion testimony of Professor Steinberg is relevant to disputed issues regarding Plaintiffs' claim of alter ego.

  2. <u>The Court's Prior Orders Contemplate Alter Ego Discovery and Do Not Moot Plaintiffs' Alter Ego Claims.</u>

BP contends that the Court's prior orders recognize that Defendants' stipulation to joint liability purportedly moot Plaintiffs' claims of alter ego. That argument is belied by the statements of counsel and the Court at the July 6, 2011 hearing as well as the terms of other orders signed by the Court at the time of that hearing and thereafter.

First, as noted above, BP's counsel expressly disavowed any intent to stipulate to alter ego.

Second, the Court has acknowledged Plaintiffs' right to use discovery from the MDL Litigation regarding alter ego despite Defendants' stipulation regarding joint liability. At the July 6, 2011 hearing in this case, counsel for Plaintiffs stated that Court's ruling would entitle Plaintiffs to take alter ego discovery directly from Defendants if such discovery were not already available from the MDL Litigation:

> MR. WATTS: * * * I'm entitled to to paper discovery and a deposition on that subject both from E&P and from England so that I can figure out whether I can get there or not.

The Court replied that it would allow direct discovery if such information were not already available in discovery from the MDL Litigation:

> THE COURT: "If you don't have it already. I mean, if it is not readily available in the documents and discovery that you have already received."

*Tr. 7/6/11 Hrg. at 62:14-16.*

The Court issued its Order Concerning Discovery on July 7, 2011. *See Doc. 145*. In that order, the Court expressly acknowledged that discovery regarding alter ego issues would continue, but limited its scope by ruling that "the scope of alter ego documentation discovery is . . . limited to documents relating to the Atlantis activity. This ruling is not intended to limit deposition questions." *Id.* On August 24, 2011, the Court denied Plaintiffs' motion to compel responses to certain interrogatories. Although the Court initially noted that the interrogatories had been mooted by the stipulation, the order nonetheless provides that the interrogatories exceeded the scope of permissible alter ego discovery -- again acknowledging that discovery regarding alter ego issues was permissible, albeit restricted in scope and means. *See Doc. 177*. Thereafter, Plaintiffs sought to notice depositions of corporate representatives regarding the relationships among the defendant entities. *See Doc. 180*. On September 12, 2011, the Court denied that motion, once again observing a belief that the stipulation had

mooted the proposed deposition but continuing to make note of "the limitations this Court placed on the scope of alter ego discovery." *Doc. 188*.

Although previous orders have limited the discovery Plaintiffs may seek directly from the Defendants, the Court has necessarily resisted the conclusion that the alter ego issue has been wholly mooted by the limited stipulation.[3] Accordingly, this Court should deny Defendants' Motion to Strike because the opinion testimony of Professor Steinberg is relevant to disputed issues regarding Plaintiffs' claim of alter ego.

C.    **Defendants Should Not Be Permitted to Use Their Stipulation to Indemnify BP E&P to Obtain a De Facto and Improper Summary Judgment on Certain Claims Asserted by Plaintiffs.**

Under Defendants' flawed theory and interpretation of this Court's orders, Defendants' agreement to indemnify BP E&P moots (1) Plaintiffs' FCA claims against Defendants for causing fraudulent claims and (2) Plaintiffs' effort to attribute the acts, knowledge, and statements of each Defendant to other Defendants (even though Defendants have admitted to the Court that the stipulation does not address these claims). Thus, Defendants take an admittedly narrow stipulation and ask the Court to give it broad effect exceeding its language. They argue that their narrow stipulation precludes Plaintiffs from presenting evidence on unrelated elements of their claim. To permit that construction would impermissibly allow Defendants to obtain a de facto summary judgment without the motion, discovery, and notice required by Rule 56.

Defendants have not stipulated to liability under the FCA for causing false claims to be made to the Government and have expressly refused to stipulate to

---

[3] In fact, on June 21, 2011, the day *after* Defendants filed their stipulation, the Court issued an order by which it granted Plaintiffs' Motion to Compel responses to certain discovery requests and overruled a number of objections asserted by Defendants. *See Doc. 126*. Among other things, the motion to compel specifically sought discovery regarding alter ego issues. *Doc. 111* at 33-34. By overruling the objections to Request for Production 54 (as it expressly did in subparagraphs f, g, and h of its June 21, 2011 order) and ordering fully responsive answers to Interrogatories 1-4 in Plaintiffs' First Set of Common Interrogatories, the Court affirmatively compelled production of materials responsive to requests for alter ego discovery.

Plaintiffs claims of alter ego. They should not be permitted to use their agreement to indemnify BP E&P to prevent Plaintiffs from proving these claims.

## II. PROFESSOR STEINBERG'S OPINIONS ARE INTENDED TO ASSIST THE JURY IN ASSESSING FACT QUESTIONS REGARDING ALTER EGO AND DEFENDANTS' LIABILITY UNDER THE FCA FOR CAUSING FALSE CLAIMS TO BE MADE TO THE GOVERNMENT.

Defendants next argue that Professor Steinberg's opinions fall short of the predicates set out in Rule 702 regarding the admissibility of expert opinions. Specifically, they contend that Professor Steinberg's opinions will usurp the province of the jury and the role of the Court. They also contend that his opinion is equivocal and, on that basis, not admissible. Each of these arguments fails.

### A. Alter Ego Issues are Fact Questions to be Determined by the Jury; Expert Opinion Regarding the Interrelationship of the BP Entities Will Assist the Jury in Making that Determination

Under *Daubert,* this Court must determine whether Professor Steinberg's opinion is relevant and will assist the trier of fact in resolving a factual dispute or to otherwise aid in understanding the evidence in a case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993); FED. R. EVID. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."). Expert testimony is helpful to the trier of fact if it concerns matters that are beyond the understanding of the average layperson. *See United States v. Webb*, 625 F.2d 709, 711 (5th Cir. 1980)("The theory upon which expert testimony is excepted from the opinion evidence rule is that such testimony serves to inform the court about affairs not within the full understanding of the average man.").

Here, the testimony Professor Steinberg will offer concerns the interrelationship of the Defendant entities, in support of Plaintiffs' alter ego theories. The Fifth Circuit has acknowledged that whether one entity is the alter ego of another presents a fact

question for the jury's determination. *See, e.g., Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 180-81 (5th Cir. 1981)(noting manner in which jury was charged regarding veil-piercing issues). In making that determination, the jury is asked to consider whether a parent entity controlled and dominated the subservient corporation. *See United States v. Jon-T Chem., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985). In federal question cases, federal common law governs the alter ego inquiry, and a laundry list of factors[4] guide the jury's determination. *See id.* While none of the factors is determinative, and the jury must consider the totality of the circumstances, it is also clear that assessing whether most (if not all) of those factors have been satisfied requires a deep understanding of technical business concepts and evaluation of complex documentary evidence. Testimony from knowledgeable experts on that subject is appropriate. *See generally Bauman v. Centex Corp.*, 611 F.2d 1115, 1120-21 (5th Cir. 1980) (allowing expert opinion regarding complex issues of corporate management).

Defendants urge that Steinberg's opinions will not aid the jury in making its determination, but they reach that conclusion by mischaracterizing the nature of Professor Steinberg's opinions. It is certainly true that Professor Steinberg has reviewed discovery products and other materials in reaching his conclusions in this case; and, like nearly every other expert, testifying on nearly every other subject in virtually every case involving expert testimony, Professor Steinberg has relied upon those materials in reaching his conclusions in this instance. But Professor Steinberg's opinions here

---

[4]    Those factors include whether: (1) the parent and the subsidiary have common stock interest; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns;  (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

involve far more than a mere recitation of the evidence.  To the contrary, his report evidences his methodology of considering that evidence in light of customs and practices known to him by virtue of his training, education, knowledge, and experience in corporate governance and corporate law to reach conclusions that bear upon the relevant factors for assessing the interrelationship of the BP entities.

Professor Steinberg opines that "Under custom and practice, BP Global dominated and controlled BP Exploration and Oil to such a degree that BP Exploration and Oil was serving as a conduit for BP Global's business."  Over the succeeding 11 pages of his report, Professor Steinberg details and analyzes the relevant evidence.  For instance, the report analyzes the structure of the BP entities involved in the operation of the Atlantis platform to establish that BP Exploration is not the operator of the Atlantis platform and that other entities within the BP family have, instead, been tasked with that role.  It proceeds to analyze, in a structural sense, financial and operational decisions to assess which entity operates and exercises control, concluding that entity is BP Global.  It considers an April 2010 reorganization of the BP operational structure to determine the effect of that occurrence on the autonomy of subsidiary entities like BP Exploration.  While the report refers extensively to internal communications within BP's structure, it evaluates those communications to determine the relative degree of oversight and operational control exerted by various entities over Atlantis.  Professor Steinberg's report also reviews the communications in gross to assess the formal acknowledgment of subsidiaries by BP and relies upon the absence of such acknowledgments to assess the extent of BP Global's domination and control.

Far from BP's characterization, Professor Steinberg's report readily demonstrates the extensive analysis of the available evidence he employed in reaching the conclusions that he ultimately offers.  Significantly, too, those conclusions are germane

to the jury's assessment of the evidence in light of the *Jon-T* factors. Whether particular evidence will or will not establish those factors is not a subject within the common knowledge of the average juror.

BP's argument concerning the propriety of Professor Steinberg's opinions in this regard also wholly ignores Federal Rule of Evidence 704(a), which expressly permits an expert witness to offer an opinion that embraces an ultimate issue to be decided by the trier of fact. *See* FED. R. EVID. 704(a)("testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."); *BP Products N. Am. Inc. v. Int'l Maint. Corp.*, NO. Civ. A. H-03-5218, 2005 WL 5976553 at *2 (S.D. Tex. May 27, 2005). This rule was specifically intended to eliminate the kinds of arguments that Defendants make here. The Advisory Committee notes to Rule 704 state: "the so-called 'ultimate issue' rule is specifically abolished by the instant rule." *See* FED. R. EVID. 704 advisory committee's note. "The basis usually assigned for the [ultimate issue] rule, to prevent the witness from 'usurping the province of the jury,' is aptly characterized as 'empty rhetoric.'" *Id.*

Those principles have led courts to admit expert testimony regarding alter ego issues while rejecting claims that such testimony usurps the jury's province. For example, a law professor designated to testify regarding corporate governance could testify about how the evidence in a case "may indicate that the relation between the Defendants exceeded the control a parent ordinarily exercises over its subsidiary so as to justify veil-piercing." *See Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.*, No. 99 Civ. 1725 (VM), 2003 WL 1878246 at *5 (S.D.N.Y. Apr. 11, 2003). In that breach of contract case, the Court noted that testimony concerning the corporate relationships between the Defendants was "crucial if the laymen jury is to understand fully the complex issues in this matter." *Id.* Overruling an objection that such testimony would invade the

province of the jury, the Court explained that the expert intended to offer opinion derived from the evidence regarding the relationship between the entities. The Court found that such an opinion was admissible and relevant and that its presentation to the jury would not invade the fact finder's role in the case. *Id.* at *6. Similarly, an accountant was permitted to testify to his opinion that while the relationships of two entities "resembled that of parent and subsidiary," his review and analysis for the business and financial facts "indicated an alter ego relationship" between them. *See United States ex rel. Johnson Pugh Mechanical, Inc. v. Landmark Constr. Corp.*, 318 F. Supp.2d 1057, 1066-68 (D. Colo. 2004). And, likewise, an expert whose testimony was based upon his review of financial statements and other documents was permitted to testify about the conclusions he drew about the management of the corporation, including his opinion that the corporation and its shareholders "were operating as one entity and that the corporation was used for personal reasons." *Cantiere DiPortovenere Piesse S.p.A. v. Kerwin*, 739 F.Supp. 231, 238 (E.D. Pa. 1990). Significantly, none of these decisions identifies alter ego testimony to be a legal conclusion.[5]

Professor Steinberg's report in this case concerns similar matters and his opinions are derived through similar analysis. Professor Steinberg's report simply offers an evaluation of the available evidence, including objective facts, to assess facets of the relationships among the Defendant entities. That he uses certain factors

---

[5] The cases cited on page 9 of Defendants' motion acknowledge the same limits on this testimony that *Cary Oil* did -- that in testifying about the analysis of facts with an eye towards assisting the jury in understanding what are often complex and highly nuanced activities of corporate entities, experts are not permitted to stray into direct statements as to whether those facts establish one entity as the alter ego of another. *See Cary Oil*, 2003 WL 1878246 at *6 ("As long as [the expert's] discussion does not become a statement to the jury 'on how its verdict should read,' and [the expert] 'couches his opinion specifically "on the evidence that he looked at and the work that he did,"' the Court is satisfied that his opinions will fall within the accepted guidelines for admissible testimony."). Accordingly, those cases do not suggest a different outcome than *Cary Oil* would suggest in this case. In no event did any of the Courts wholly exclude any testimony regarding alter ego issues as legal conclusions.

recognized at law to direct his analysis does not mean that he is offering a conclusion of law. Since Defendants are multinational entities with complex business structures and relationships, expert testimony to aid the jury in understanding what various documents and other materials show about their relationships will clearly be helpful to making a finding on the alter ego issue. In keeping with the edict that the relevance requirement in Rule 702 be construed liberally, there is simply no basis to support exclusion of Professor Steinberg's opinions. *See Daubert,* 509 U.S. at 596 (relevance under Rule 702 liberally construed; "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").[6]

   **B.    Professor Steinberg's Assumption that BP Exploration was Inadequately Capitalized is Supported by Evidence and That Facet of His Analysis Addresses Only One of the Many Alter Ego Factors Applicable in this Circuit.**

BP contends that Professor Steinberg's opinions are equivocal because he declined to affirmatively render an opinion as to whether BP Exploration was adequately capitalized. In his report, Professor Steinberg states:

---

[6] The cases cited in footnote 4 of the motion do not undermine this conclusion because in each of those cases, the opinion manifestly constituted either legal conclusions or were simply evaluations of the credibility of other witnesses or evidence. In *Bilzerian,* the court distinguished between opinions that embrace ultimate issues and those that constitute legal conclusions and ultimately held that an expert who testified to general background on federal securities regulations and certain filing requirements was offering unobjectionable testimony touching upon an ultimate issue. *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2nd Cir. 1991). In *Berry,* the Court determined that the expert witness was not qualified to offer the opinions in question and that, in any event, those opinions amounted to legal conclusions that did more than simply embrace an ultimate issue. *See Berry v. City of Detroit,* 25 F.3d 1342, 1350-53 (6th Cir. 1994). In *Farrell,* the expert's testimony was impermissible because it consisted substantially of credibility determinations and assessing the weight to be assigned to other evidence. *See United States v. Farrell,* 563 F.3d 364, 377-78 (8th Cir. 2009). Likewise, in *Nichols,* the expert witness testified to an opinion regarding the credibility of other witnesses and the inconsistencies and biases discerned from the testimony of those witnesses; the court found such subjects to be exclusively the province of the jury and concluded that opinion testimony on those matters was impermissible. *See Nichols v. American Nat'l Ins.,* 154 F.3d 875, 883 (8th Cir. 1998). BP's attempt to rely, in the text, on *Irwin* fails for the same essential reason -- the expert in that circumstance was tasked with offering opinions regarding the credibility of explanations offered in support of business judgments and such assessments are committed to the sound discretion of the jury. *See GST Telecomms., Inc. v. Irwin,* 192 F.R.D. 109, 111 (S.D.N.Y. 2000).

> There is evidence that BP Global provided its subsidiary, BP Exploration and Oil, with inadequate funding, personnel, and other resources so as to render it reasonably likely that BP Exploration and Oil would be unable to adhere to its legal obligations. Although I have declined at this time to render an opinion whether BP Exploration and Oil was inadequately capitalized . . . there exists evidence in the record to support that opinion.

*See Doc. 200-1* at 17. Assuming that this could be deemed to be an opinion offered by Professor Steinberg and subject to the requirements of Rule 702, nothing about these statements justifies exclusion of Professor Steinberg's opinions in part or in whole.

First, the text of Rule 702 demands that the opinion be "based on sufficient facts or data." *See* FED. R. EVID. 702. Professor Steinberg's statement itself demonstrates that his testimony on this issue is grounded in the available evidence in this case, which he opines will support an opinion that BP Global undercapitalized its subsidiary. Certainly, Defendants may dispute the conclusion that Professor Steinberg draws from those facts, but "the emphasis . . . on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *See* FED. R. EVID. 702, advisory committee note; *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (inquiry regarding admissibility of expert testimony is not focused upon whether the opinion is correct but whether it fits analytically with the facts of the case). The quoted passage from Professor Steinberg's report is supported by citations to and quotes from deposition testimony of three different witnesses.

In addition, in light of Professor Steinberg's explicit reliance upon deposition testimony, there is noting at all speculative or conjectural about the resulting statement. To the contrary, Professor Steinberg takes facts established by the testimony of witnesses and, from those facts, opines that a conclusion that the subsidiary was undercapitalized is supportable. Testimony predicated on such a factual basis is clearly

not infirm; after all, an expert may permissibly give an opinion based entirely upon hypothetical facts that find support in other evidence. *See Barefoot v. Estelle*, 463 U.S. 880, 903 (1983)("Expert testimony, whether in the form of an opinion based on hypothetical questions or otherwise, is commonly admitted as evidence where it might help the factfinder do its assigned job."); *see also United States v. Fields*, 483 F.3d 313, 344 (5th Cir. 2007)(citing *Barefoot*). Again, Professor Steinberg has simply offered a conclusion based upon facts to which other witnesses have testified; the extent to which that conclusion is supportable is left for the jury to resolve. *See United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)("as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

The cases cited by Defendants are distinguishable and, thus, offer no basis to ignore those truths. For instance, Professor Steinberg's statement does not concern a matter like injury causation, for which courts demand opinions based on probabilities rather than possibilities. *See Bowers v. Norfolk S. Corp.*, 537 F.Supp.2d 1343, 1368-69 (M.D. Ga. 2007). Professor Steinberg's statement does affirmatively state that the testimony supports an opinion that BP undercapitalized its subsidiary, unlike the expert in *Gudur*, who had not made any calculations regarding the subject matter of his testimony and was unable to state whether the Defendant's rates were too high or too low. *See United States ex rel. Gudur v. Deloitte Consulting, LLP*, 512 F.Supp.2d 920, 945-46 (S.D. Tex. 2007). Here, by contrast, Professor Steinberg has reviewed the evidence and has unequivocally stated that the testimony would support a conclusion of undercapitalization. Finally, this is not a situation in which Professor Steinberg's opinion is modified by indefinite terms that connote only possibilities; he does not state that the evidence "may" support a conclusion of undercapitalization, or that it

"appears" that the subsidiary was undercapitalized. *See Muniz v. Rexnord Corp.*, No. 04 C 2405, 2006 WL 5153078 at *2 (N.D. Ill. Nov. 2, 2006). Accordingly, none of the cases cited by Defendants support a conclusion that Professor Steinberg's statement should be excluded.

Even if Defendants' contention were deemed correct, it could have no greater effect than to constrain Professor Steinberg's testimony on this particular issue. Ultimately, whether or not the subsidiary was undercapitalized is only one of the many factors that the jury will be asked to weigh in making its finding on the alter ego issue. Professor Steinberg's opinions concern many of those issues other than just the undercapitalization of the subsidiary. Indeed, his report includes conclusions that bear on the intermingling of daily operations, the failure to observe corporate formalities, the dependency of the subsidiary on the parent for business opportunities, and the payment of the subsidiary's expenses and salaries by the parent. Significantly, Defendants have not questioned the certainty of Professor Steinberg's opinions with regard to any conclusions other than his statements regarding undercapitalization. Thus, even if the opinions regarding the sufficiency of the subsidiary's capitalization could be stricken, Professor Steinberg's testimony will nevertheless be helpful to the jury in its assessment of other alter ego factors.

## III. PROFESSOR STEINBERG'S RELIANCE UPON DEPOSITIONS DESIGNATED FROM MDL 2179 IS PROPER

Finally, Defendants argue that Professor Steinberg's report impermissibly relies upon deposition testimony given in MDL 2179, which Plaintiffs have designated for use in this litigation and to which Defendants have objected. The propriety of the designations and the use of the designated materials in this litigation are addressed at length in Plaintiffs' Response to Defendants' Motion to Enforce the court's order

concerning production from MDL 2179, which is being filed contemporaneously with this response. As Defendants have in their Motion to Strike Professor Steinberg's report, Plaintiffs incorporate by reference the arguments made in that response and the relief requested therein. It is worth noting, however, that expert witnesses are permitted to rely upon otherwise inadmissible evidence where the facts are of a type reasonably relied upon by experts in the particular field. *See* Fed. R. Evid. 703 ("facts or data need not be admissible in evidence in order for the opinion . . . to be admitted.").

While the situation presented here appears novel, there can be no reasonable dispute that experts in the field of corporate governance and veil-piercing reasonably rely upon deposition testimony in reaching their conclusions. *See generally Dana Corp. v. American Standard, Inc.*, 866 F.Supp. 1481, 1501 (N.D. Ind. 1994) (expert "based his opinions on his understanding of what various depositions reported, and he may do that under Rule 703."). Here, that is all the more true because the propriety of Defendants' objections to the production of the depositions has not yet been determined. Defendants' assumption that use of the depositions will be prohibited is misplaced, but that hope cannot serve as a basis to avoid the clear purpose of Rule 703. *See First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996)(Rule 703 allows experts to rely upon inadmissible evidence in forming their opinions); Fed. R. Evid. 703, advisory committee note (Rule 703 does not "prevent an expert from relying on information that is inadmissible for substantive purposes.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Strike the Report and Testimony of Plaintiffs' Proposed Expert Marc Steinberg in all things.

Dated:  November 15, 2011.

By:   _/s/ Mikal C. Watts_
Mikal C. Watts
State Bar No. 20981820
Federal Bar No. 12419

Four Dominion Drive,
Bldg. 3, Suite 100
San Antonio, Texas 78257
Telephone: (210) 447-0500
Facsimile: (210) 447-0501
MCWatts@wgclawfirm.com

**ATTORNEY-IN-CHARGE FOR
PLAINTIFFS**

**OF COUNSEL:**

**WATTS GUERRA CRAFT LLP**
J. Hunter Craft
State Bar No. 24012466
Federal Bar No. 24377
HCraft@wgclawfirm.com
Christopher V. Goodpastor
State Bar No. 00791991
Federal Bar No. 18505
CGoodpastor@wgclawfirm.com
Francisco Guerra IV
State Bar No. 00797784
Federal Bar No. 22568
fguerra@wgclawfirm.com
Edward W. Allred
State Bar No. 50511764
Federal Bar No. 22973
eallred@wgclawfirm.com
Emily C. Jeffcott
State Bar No. 24069993
Federal Bar No. 1069933
EJeffcott@wgclawfirm.com
811 Barton Springs Road
Suite 725
Austin, Texas 78704
Telephone: (512) 381-1964
Facsimile: (512) 479-0502

**MALLETT & SAPER, LLP**
Edward A. Mallett
State Bar No. 1283000
Federal Bar No. 442
Edward@mgscounsel.com
JPMorgan Chase Tower
600 Travis St., Suite 1900
Houston, Texas 77002
Telephone: (713) 236-1900
Facsimile: (713) 228-0321

**PERRY & HAAS L.L.P.**
David L. Perry
State Bar No. 15800000
Federal Bar No. 5685
DLPerry@perryhaas.com
René Haas
State Bar No. 21406800
Federal Bar No. 5680
RHaas@perryhaas.com
P.O. Box 1500
Corpus Christi, Texas 78403
Telephone: (361) 880-7500
Facsimile: (351) 887-9507

**Mary M. Whittle**
Attorney at Law
TX State Bar No. 24033336
D.C. Bar No. 973916
3930 Argyle Terrace, N.W.
Washington, DC 20011
Telephone:  (202) 320-1612
mmwhittle@mac.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of November 2011, a true and correct copy of the foregoing document was served on the following counsel of record, as noted below:

Otway B. Denny, Jr.
Daniel M. McClure
Katherine Dudas Mackillop
Anne M. Rodgers
Christopher Brian Watt
Barclay Richard Nicholson
FULBRIGHT & JAWORSKI LLP
1301 McKinney St
Ste. 1500
Houston, TX 77010
*Via Email and First Class Mail*

Lynne Liberato
HAYNES AND BOONE L.L.P.
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas 77010
*Via Email and First Class Mail*

L. Poe Leggette
FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Ave. NW
Ste 400
Washington, DC 20004
*Via Email and First Class Mail*

Sarah R. Teachout
HAYNES AND BOONE L.L.P.
2323 Victory Avenue
Ste 700
Dallas, Texas 75219
*Via Email and First Class Mail*

Damond R. Mace
SQUIRE SANDERS & DEMPSEY LLP
127 Public Square
4900 Key Tower
Cleveland, OH 44114
*Via Email and First Class Mail*

Jonathan Andrew Hunter
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139
*Via Email and First Class Mail*

Joyce Branda
United States Department of Justice
Ben Franklin Station
P.O. Box 261
Washington, DC 20044
*Via First Class Mail*

Jill Venezia
Assistant United States Attorney
P.O. Box 61129
Houston, Texas 77208-1120
*Via First Class Mail*


*/s/ Mikal C. Watts*
Mikal C. Watts