IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| EX REL. KENNETH W. ABBOTT, ET AL., | § | |
| | § | C. A. No. 4:09-cv-01193 |
| v. | § | |
| | § | JURY DEMANDED |
| BP EXPLORATION AND | § | |
| PRODUCTION INC., ET AL., | § | |

**BP'S MOTION TO EXCLUDE THE REPORTS AND TESTIMONY OF
PLAINTIFFS' PROPOSED EXPERT MICHAEL E. SAWYER**

Defendants BP Exploration & Production Inc., BP America Inc., BP p.l.c., and BP

Products North America Inc. (BP) move under Federal Rules of Evidence 403 and 702 and

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), to exclude the reports and

testimony of plaintiffs' proposed expert on process safety, Michael E. Sawyer, because:

- Sawyer's proffered interpretation of the applicable DOI regulations is incorrect and an improper attempt to usurp the Court's role by offering his personal opinion on what the law is.

- Sawyer has no specialized knowledge about the DOI regulations at issue or offshore oil and gas facilities, and he has not adequately investigated the facts of this case.

- Sawyer's testimony on non-technical documents, BP's state of mind, and whether BP knowingly made misstatements would improperly invade the jury's role.

- Sawyer's speculative opinions about hypothetical future damage are inadmissible conjecture.

- Any claimed probative value of Sawyer's testimony is substantially outweighed by the danger that it will confuse the issues, mislead the jury, create unfair prejudice, waste time, and cause undue delay.

## INTRODUCTION

Kenneth W. Abbott sued BP under the False Claims Act (FCA) for allegedly intentionally making false statements in certifications to the Department of the Interior (DOI)[1] about two parts of BP's offshore oil and gas production platform, Atlantis.  Abbott, along with Food and Water Watch, Inc. (FWW) also sued BP under the Outer Continental Shelf Lands Act (OCSLA) to enjoin operations at Atlantis.  DOI, however, has already found that BP did not make false statements or violate the applicable DOI regulations, and should be allowed to continue to operate Atlantis.

## ARGUMENT AND AUTHORITIES

Plaintiffs must prove by a preponderance of the evidence that Sawyer's testimony satisfies Federal Rule of Evidence 702.  *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).  Rule 702 permits the use of "scientific, technical, or other specialized" testimony, but only if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

Further, an expert may testify only if (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the expert has reliably applied the principles and methods to the facts of the case."  *Id.*  In short, expert testimony must be "both relevant and reliable."  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

---

[1] BP uses "DOI" in this motion to refer to the Department of Interior, as well as DOI's former Minerals Management Service, DOI's former Bureau of Ocean Energy, Regulation and Enforcement, and DOI's current Bureau of Safety and Environmental Enforcement.  Statutory authority for all of the actions pertaining to Atlantis taken by these entities is derived from the Outer Continental Shelf Lands Act (OCSLA).  43 U.S.C. § 1334(a).

In addition, the Court should exclude evidence under Rule 403 where its probative value is substantially outweighed by the dangers of confusing the issues, unfair prejudice, misleading the jury, undue delay, or waste of time.

**1.      Sawyer Improperly Usurps the Court's Role by Giving His Uninformed Personal Opinions About the Law and DOI Regulations**

Sawyer, who has no offshore experience and had never even read the relevant DOI regulations before being hired by plaintiffs' counsel, intends to interpret the DOI offshore regulations and tell the jury what the law is.  His opinions are inadmissible because they constitute an improper attempt to instruct the jury on the law.  The Fifth Circuit has repeatedly held that the rules of evidence "do[] not allow an expert to render conclusions of law."  *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996); *see also United States v. Griffin*, 324 F.3d 330, 348 (5th Cir. 2003).   "There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge."  *Owen v. Kerr McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).  "Opinion testimony about 'what the law is' or some expert's 'understanding' about what the law means is impermissible."  *United States v. Rothenberg*, 328 F. App'x 897, 902 (5th Cir. 2009).

Here, Sawyer intends to testify on what the law is based on his personal, subjective interpretation of the two DOI regulations at issue.  Ex. A, Report at 13-34.  As shown below, plaintiffs want to use Sawyer's testimony to insert words that do not appear in the <u>federal</u> regulations based on a misapplication of Texas <u>state</u> law – which does not apply, as a matter of law.  Ex. A, Report at 13-34.  Even if Sawyer possessed significant experience with the federal regulations (which he does not), he would not be allowed to offer his personal interpretation of the law.  The Federal Rules of Evidence permit only the Court to state legal conclusions.  Accordingly, Sawyer's opinions about the law should be excluded.

2.     **Sawyer's Testimony About DOI Regulations and the Texas Engineering Practices Act Should Be Excluded Because It Is Irrelevant and Misstates the Law**

Sawyer intends to testify that BP knowingly made false certifications under two specific federal DOI regulations because it failed to put the words "as-built" or the formal stamp of a professional engineer on certain drawings.  Sawyer asserts that 30 C.F.R. § 250.802(e)(5), which deals with the design of the mechanical and electrical part of the production safety system, requires that a professional engineer (PE) stamp appear on the face of each drawing if that drawing is to be considered approved by a PE.  Ex. B, Sawyer Dep. at 78, 82.  Sawyer also claims that 30 C.F.R. § 250.901(d) (now § 250.905(k)) requires that both a PE stamp and an as-built label appear on the face of each platform structural drawing described in that section.  *Id.* at 92-95, 111-12.  This testimony misstates the law, and is irrelevant and inadmissible for several reasons.

As BP demonstrated in its summary judgment motions on FCA and OCSLA liability, *see* Docs. 235 and 238, the applicable DOI regulations do <u>not</u> require documents to have as-built labels or PE stamps.  DOI itself has said so in a 48-page report ("the DOI Report") it issued after thoroughly investigating Abbott's claims in this case.  The relevant DOI regulations are <u>federal</u> regulations concerning a platform approximately 190 miles off the coast of Louisiana (and approximately 350 miles from Texas), and Sawyer's statements about Texas <u>state</u> law (which he misconstrues anyway) are inapplicable here.

A.     **The DOI Regulations Do Not Require "As-Built" Labels Or PE Stamps**

Sawyer's testimony that certain Atlantis drawings required as-built labels and PE stamps should be excluded as irrelevant because the testimony is based on his personal legal theory developed for this case rather than the actual DOI regulations, which do <u>not</u> require those labels or stamps.  "Expert testimony which does not relate to any issue in the case is not relevant and,

ergo, non-helpful." *Daubert*, 509 U.S. at 591. The Federal Rules define "relevant evidence" as that which has "any tendency to make the existence of a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401; *Daubert*, 509 U.S. at 587. Even if a standard and reliable methodology is used, evidence is not relevant unless that "reasoning or methodology properly can be applied to the facts at issue." *Daubert*, 509 U.S. at 593.

Expert testimony based on an erroneous interpretation of the law is irrelevant and must be excluded under Rule 702. *See, e.g.*, *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 277-79 (5th Cir. 2009) (affirming the exclusion of expert testimony on a measure of damages "not supported by [the] law"); *Fashion Boutique of Short Hills, Inc. v. Fendi, U.S.A., Inc.*, 75 F. Supp. 2d 235, 239, 241-42 (S.D.N.Y. 1999), *aff'd*, 314 F.3d 48 (2d Cir. 2002). Trial courts should act as gatekeepers to exclude expert testimony that is not "relevant to the task at hand." *Daubert*, 509 U.S. at 597; *Kuhmo*, 526 U.S. at 152.

Sawyer's opinions that 30 C.F.R. § 250.802(e)(5) and § 250.901(d) require the use of a PE's stamp and that § 250.901(d) also requires an as-built label are incorrect as a matter of law. First, it is undisputed that the plain language of the regulations does not require that a PE's stamp appear on the face of any document. *See* 30 C.F.R. §§ 250.802(e)(5), 250.901(d). In fact, Sawyer admits that the actual language of the two DOI regulations does not state that PE's stamps or as-built labels are required. Ex. B, Sawyer Dep. at 78-81. When asked whether either of the regulations contained the words "PE stamp," "PE seal" or otherwise "state[d] that any specific drawing or document has to be stamped by a registered PE," Sawyer admitted, "Those words are not there." *Id.* Similarly, Sawyer admits that the plain language of § 250.901(d) does

not require a stamp or designation with the specific words "as-built."  Ex. B, Sawyer Dep. at 111-14.

Moreover, DOI has examined Sawyer's and Abbott's claims in detail, and determined that they are "premised on a fundamental misreading" of the DOI regulations.  DOI agrees with BP's interpretation that DOI regulations require neither formal PE stamps nor as-built labels.  In response to Abbott's allegations and at the urging of members of Congress, DOI conducted an intensive regulatory enforcement investigation.  This involved an "in-depth analysis" by eight DOI engineers of more than 3,400 Atlantis engineering drawings and other critical technical documentation, interviews of dozens of BP and contractor witnesses, and interviews of Abbott and Sawyer.  Ex. D, DOI Report at 27; Ex. H, Declaration of Charlos Ward.

On March 4, 2011, DOI issued its Report, which concluded, among other things, that (1) platform drawings do <u>not</u> need to be labeled with the words "as built" to comply with the regulation's as built drawing requirements; and (2) platform drawings and Production Safety System designs do <u>not</u> have to be stamped by registered professional engineers to comply with DOI regulations.  Ex. D, DOI Report at 32 & n.10.  DOI confirmed:  "Current . . . regulations do not address how engineering documents are to be stamped, organized and labeled" and "there is no requirement that . . . drawings carry the label 'as-built' or that they be maintained in a specific manner."  Ex. D, DOI Report at 32 & n.10.  DOI found Abbott's allegations and Sawyer's interpretations to be "without merit" and "unfounded."  *Id.* at 48.  Bryan Domangue, DOI's District Manager for the Bureau of Safety and Environmental Enforcement, Houma Division, has also testified that PE stamps are not required.  Ex. E, Domangue Dep. at 96-97 ("those stamps were not required").

Sawyer acknowledges that the government <u>disagrees</u> with his view of the federal regulatory requirements, and he offers no valid explanation for why his interpretation should govern over that of the agency that drafted the relevant regulations and applies them every day. Ex. B, Sawyer Dep. at 84.

Indeed, Sawyer's improper interpretations of DOI regulations in this case have already been found to "ignore[] the basic structure of the Federal Register."   Doc. 211 at 12.   In plaintiffs' motion for partial summary judgment filed last year, Judge Hoyt correctly observed that "a ruling in the plaintiff's favor would essentially determine that DOI's interpretation of its own regulations, via the contested [DOI] report, is incorrect as a matter of law."  *Id*. at 12 n.21.

### B.   Sawyer's Testimony About the Texas Engineering Practices Act is Inapplicable as a Matter of Law

Atlantis is approximately 190 miles off the coast of Louisiana and 350 miles from Texas, and it is governed by explicit <u>federal</u> DOI regulations.  It is <u>not</u> within the geographic jurisdiction of Texas state law.   Moreover, the Texas <u>state</u> law that Sawyer relies upon, the Texas Engineering Practices Act, has two express exemptions that make clear that it does not apply here.  First, the oil and gas exemption, § 1001.057, provides that the Texas Engineering Practices Act does <u>not</u> apply to work under the control of a business entity related to design, fabrication, assembly and the exploration, production and transportation of oil and gas.   Second, § 1001.401(b) provides that an engineer is <u>not</u> required to use a PE stamp or seal "if the project is to be constructed or used in another state or country."   Here, Atlantis was constructed and is being used outside of the geographic jurisdiction of Texas.   Texas's geographic jurisdiction only extends nine nautical miles from the coast of Texas – not 350 miles into the Gulf.  *See* 43 U.S.C. §§ 1301(a), 1331(a) (defining the "outer Continental Shelf" as being "seaward and outside" of state waters).   For both of these reasons, the Texas Engineering Practices Act does not apply.

3.     **Sawyer's Opinions Are Unreliable Because He Has No Specialized Knowledge Regarding Interpretation of Offshore Regulations Or Offshore Platform Safety**

For an expert to testify based upon his experience and background, the expert must "have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth."  *United States v. Hicks*, 389 F.3d 514, 524-25 (5th Cir. 2004); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).  The expert's experience, training, and education must be in the discrete field or subject on which he has been designated to testify.  *See Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999); *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 438 F. Supp. 2d 696, 706 (E.D. Tex. 2006).  "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."  *United States ex rel. Gudur v. Deloitte Consulting LLP*, No. H-00-1169, 2007 WL 4322433, at *11 (S.D. Tex. Mar. 5, 2007) (citation omitted).

*Gudur* was a *qui tam* case in which the plaintiff designated an expert who was a certified public accountant with "'extensive practical knowledge of the Medicare and Medicaid reimbursement systems, the rules and regulations relating thereto, and the administrative procedures that are employed by these regulatory agencies.'"  *Id.* (quoting expert's report).  The expert stated that he was "'considered an expert in the field of Medicare and Medicaid cost reporting and regulatory issues.'"  *Id.*  The district court excluded the expert's testimony, noting that he "may be qualified to offer expert opinion testimony on ***auditing*** requests for Medicaid reimbursements, but that he does not have the qualifications or experience to offer an opinion on ***setting*** Medicaid reimbursement rates for the Texas SHARS program."  *Id.* (emphasis in

original).[2]  The court also explained that "[a]n expert cannot rely on the knowledge and expertise he gains in litigation to qualify himself as an expert."  *Id.* at \*12 (the expert's "after-the-fact attempts to gain knowledge about the controlling regulations do not render him qualified to opine on Deloitte's reimbursement rate proposals for the Texas SHARS program") (citations omitted).

Similarly, Sawyer purports to base his opinions on after-the-fact attempts to gain knowledge of offshore regulations, and he has <u>no</u> relevant specialized knowledge to apply to the subjects upon which he intends to testify.  Ex. B., Sawyer Dep. at 84, 90-91.  Sawyer is not a mechanical, electrical, structural, civil, chemical, or control systems engineer.  *Id.* at 30-31.  The only area in which he is a registered PE in Texas is fire protection, and he does <u>not</u> intend to offer any opinions related to the fire protection systems on Atlantis.  *Id.* at 30.

Sawyer admits that he has absolutely <u>no</u> prior experience or knowledge with respect to permitting for offshore platforms or the two specific DOI regulations that he claims BP has violated.   Sawyer could not say for sure that he had ever even read the regulations at issue before he was hired to work on this case.  *Id.* at 20-22, 167.

He has never before held himself out as an expert on these regulations, or given an opinion on them, and he has no certifications or training on the meaning of DOI regulations.  *Id.* at 19, 22-23.  He has never published any articles or given any speeches on OCSLA or any of its accompanying regulations.  *Id.* at 19.  Similarly, before this case he has never given any opinions

---

[2] *See also Bradley v. Phillips Chem. Co.*, 484 F. Supp. 2d 604, 613 (S.D. Tex. 2007) (granting summary judgment and excluding plaintiffs' two proffered experts, one because plaintiffs had not proved that the expert, "as experienced as he is in many aspects of the insurance business, is qualified as an expert in workers' compensation insurance," and the other because plaintiffs failed to demonstrate that he "has expertise in analysis of workers' compensation insurance policies or their legal interpretation (as opposed to his expertise in insurance audits)"); *United States v. Lupton*, 620 F.3d 790, 799 (7th Cir. 2010) (affirming exclusion of expert who was a former real estate broker who intended to testify on broker conduct relating to honest services fraud on grounds of his "lack of relevant expertise and experience, the absence of facts or data underlying his opinions, [and] the fact that what he was really offering was legal interpretation").

on the meaning of the Texas Engineering Practices Act.  *Id.* at 125.  Sawyer admits that he

knows of no authority that agrees with his interpretations of the federal regulatory requirements

at issue, and he acknowledges that DOI expressly disagrees with his interpretations.  *Id.* at 80-85,

93-97, 115-16.  He testified:

> Q:    Are you aware of anyone else who has looked at these specific words in
> this specific regulation and has interpreted those words the way you do,
> that this specific regulation requires all the drawings to have a PE stamp
> on it?
>
> A:    I can't name any individual other – other than myself and what I've stated
> in my report.

*Id.* at 95.  Nevertheless, Sawyer wants to provide an opinion to the jury about what the law is and

testify that BP failed to comply with DOI regulations because he is "competent enough to be able

to read the regulation and understand it."  *Id.* at 23.[3]

Similarly, Sawyer has no specialized knowledge or background experience with respect

to deepwater facilities.  He has never worked on any offshore oil and gas platform.  *Id.* at 27.  He

has never designed a production safety system or the hull or structure of a deepwater platform.

*Id.* at 15-16.  In fact, Sawyer has never inspected any deepwater platform (it is "not his area"),

and he has never even been on an offshore platform.  *Id.* at 15-16, 119-120.

In sum, Sawyer has <u>no</u> relevant background, experience, training or specialized

knowledge that he can apply to this case regarding floating deepwater platforms in the Gulf of

Mexico, or the relevant federal DOI regulations and permits.  Sawyer lacks <u>any</u> experience in the

discrete field in which he intends to testify.  Much like the expert in *Gudur*, Sawyer's proffered

testimony is based on nothing but his "after-the-fact attempts to gain knowledge about the

---

[3] If Sawyer were correct, and competency in reading were all that interpreting the regulations
required, there would be no need for Sawyer's expert testimony under Rule 702 in any event.
*See Mattis v. Carlton Elec. Prods.*, 295 F.3d 856, 862 n.4 (8th Cir. 2002) (expert testimony is
"not necessary where the matters to be proved fall within an area of common knowledge").

controlling regulations."   2007 WL 4322433, at *12.   These efforts do <u>not</u> render Sawyer an expert in the issues on which he intends to opine.   His claim to being "competent . . . to read [a] regulation" – essentially that he can read the English language as well as a juror – is insufficient to establish reliability under Rule 702 and *Daubert*.   Because of his total lack of experience in the discrete area at issue, Sawyer's testimony should be excluded from this case.

**4.**     **Sawyer Has Not Investigated the Facts of This Case, Bases His Opinions on Insufficient Facts and Data, and Did Not Use a Reliable Methodology**

Under Rule 702, an expert's opinions must be "based upon sufficient facts or data" and "the product of reliable principles and methods."   Fed. R. Evid. 702.   An expert cannot provide a reliable opinion unless he has adequately investigated the facts of the case on which he is to testify.   *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) ("Where an expert's opinion is based on insufficient information, the analysis is unreliable"); *see also Woods*, 163 F.3d at 937 (excluding testimony where the expert "did not take any measurements or collect any data from the accident scene in th[e] case" and simply "based his calculations on publicly accessible data").

Sawyer has not adequately investigated the facts, and he has not used an accepted engineering methodology to arrive at his opinions.   He has not done any physical testing of any component part or system at Atlantis, and has not even done any physical inspection of any part of Atlantis.   Ex. B, Sawyer Dep. at 38.   He has not met in person or spoken on the phone with any fact witness. *Id*. at 199.

In addition, Sawyer did not use any peer-reviewed methodology to arrive at his opinions, has not measured the actual or potential rate of error for his methodology, and has never done any non-litigation work involving the specific regulations at issue, and there are no standards controlling his methodology. *Id*. at 116, 164-167.

Sawyer reached his opinions simply by examining some Atlantis drawings and noting their lack of PE stamps or as-built labels.  His limited review of Atlantis documents is not sufficient under *Daubert*.  *See, e.g.*, *Wells v. Smithkline Beecham Corp.*, 601 F.3d 375, 380-81 & n.30 (5th Cir. 2011) (excluding expert testimony based only on anecdotal studies and a review of the defendant's internal documents).[4]

It is undisputed that Atlantis has been inspected and approved not only by third parties, like the American Bureau of Shipping (ABS) and the Coast Guard, but by DOI itself.  Sawyer, however, has neither inspected Atlantis nor reviewed any of the many DOI and ABS inspection reports confirming that Atlantis is safe, protective of the environment, and accurately built according to designs and plans that were approved by competent PEs.  Ex B, Sawyer Dep. at 41-44, 98-99, 101-04, 107, 155.  Sawyer also has not reviewed DOI's and the Coast Guard's annual post-production inspections.  *Id.* at 63.  He did not even know that DOI, along with the Certified Verification Agent, ABS, reviewed and approved the design and structure of the Atlantis platform.  *Id.* at 107.  He testified:

> Q:  Did you know that [DOI's former Minerals Management Service] had reviewed in detail and approved the design of the structure of the platform for Atlantis?
>
> A:  I have not – or I do not recall seeing details of anything to that effect.

*Id.*

---

[4] In their recent opposition to BP's motion to strike their summary judgment evidence, plaintiffs cite *McCoy v. Whirlpool Corp.*, 287 Fed. App'x 669, 673-74 (10th Cir. 2008), for the proposition that opinions based on an engineer's review of defendant's documents are admissible.  Doc. 307 at 5.  In stark contrast to this case, however, the expert there also based his conclusions on his own physical inspections of the subject matter of the suit.  *See id.* at 675 ("[T]here is no question that Mr. Martin, in relying on . . . his own inspection of the McCoy and other Whirlpool dishwashers, based his conclusions on facts satisfying Rule 702's reliability requirements.").

"Although there are 'no certainties in science,' the expert must present conclusions 'ground[ed] in the methods and procedures of science.'"  *Wells*, 601 F.3d at 378.  An expert must "employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.*  In analyzing the admissibility of an expert's testimony, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion offered."  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 277 (5th Cir. 1998).  In such an instance, the expert's opinions should be excluded.  *Id.*

Here, Sawyer's opinion is <u>not</u> based on reliable methods and procedures or sufficient data, and there is too great of an analytical gap between his proffered opinions and the facts of this case.  For all of these reasons, his testimony should be excluded.

5.    **Sawyer Attempts to Invade the Province of the Jury by Opining on Non-Technical Documents, BP's State of Mind, and Whether BP Made Knowing Misstatements**

Sawyer's opinions on non-technical documents and that BP knowingly made misstatements in violation of the regulatory requirements are not the type of specialized testimony allowed by Rule 702.  He merely interprets non-technical documents and emails that would already be before the jury, explaining, in effect, what result should be reached.  Expert testimony that "undertakes to tell the jury what result to reach . . . does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."  *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *see also* Fed. R. Evid. 704, Advisory Committee Note (1972) (stating that the rules relating to expert evidence are designed to "afford ample assurances against the admission of opinions which would merely tell the [trier of fact] what result to reach, somewhat in the manner of the oath helpers of an earlier day."); *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997).

When a state of mind is a relevant issue, it is for the jury – not an expert – to determine what the state of mind is. *Prather v. Prather*, 650 F.2d 88, 90 (5th Cir. 1981); *Marlin v. Moody Nat'l Bank, N.A.*, 248 Fed. App'x 534, 541 (5th Cir. 2007). An expert's conclusory assertions regarding a defendant's state of mind are neither helpful nor admissible. *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

Sawyer references internal BP documents and emails he contends support his conclusion that BP knew that PE stamps and as-built labels were required on certain drawings. Ex. A, Sawyer Report at 20-23. These documents do not contain specialized or complex terms beyond a lay jury's expertise. The jurors in this case do not need Sawyer to tell them what this evidence means. Courts consistently have held that testimony like Sawyer's is inadmissible:

> As Professor McCormick notes, such testimony "amounts to no more than an expression of the [witness's] general belief as to how the case should be decided." *McCormick on Evidence* §12, at 26-27. The admission of such testimony would give the appearance that the court was shifting to witnesses the responsibility to decide the case. *McCormick on Evidence* §12, at 27. It is for the jury to evaluate the facts in the light of the applicable rules of law.

*Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977).[5]

Expert testimony does not aid the jury if it addresses an area within the jury's common knowledge. *United States v. Angleton*, 269 F. Supp. 2d 868, 873 (S.D. Tex. 2003); *Mattis v. Carlton Elec. Prods.*, 295 F.3d 856, 862 n.4 (8th Cir. 2002). Sawyer's opinions that are based on

---

[5] *See also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (expert testimony not permitted if it usurps role of jury in applying law to facts before it); *Berry v. City of Detroit*, 25 F.3d 1342, 1350-53 (6th Cir. 1994) (purported expert's testimony that police officer's actions were "not warranted under the circumstances" and "totally improper" merely told jury what result to reach and was, therefore, improperly admitted); *United States v. Farrell*, 563 F.3d 364, 377-78 (8th Cir. 2009) (testimony by expert in human trafficking that government's peonage case was supported by "incredible" and "strong" evidence, and indicating that workers did not control their own money and were forced to pay debt, invaded province of jury, as an express opinion about defendants' guilt and truthfulness of workers); *Nichols v. Am. Nat'l Ins.*, 154 F.3d 875, 883 (8th Cir. 1998) (expert opinion is "not helpful if it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the jury").

reading e-mails and non-technical documents will therefore not be helpful to the jury under Rule 702, and they should be excluded.

**6.     Sawyer's Opinions About Hypothetical Future Damage Are Inadmissible Conjecture**

Sawyer intends to opine that a "catastrophic failure [of the Atlantis facility] is virtually certain."  Ex. A, Report at 3; Ex. B, Sawyer Dep. at 137.  This opinion, however, is not based on any proper methodology or any actual inspection of the Atlantis platform.

Sawyer admits that (1) engineers should never guess or speculate and (2) without guessing or speculation, he cannot say when any future failure is going to occur, what will fail, how, or what will happen.  Sawyer admits that any such opinions would require a rigorous safety case or risk assessment, which he has <u>not</u> done.  He has <u>not</u> used any accepted engineering practice or methodology to arrive at his opinion on future damage, and cannot assign <u>any</u> percentage likelihood that there will be any future damage.  Ex. B, Sawyer Dep. at 140-48, 165-67.

Sawyer acknowledges that Atlantis has successfully weathered Hurricane Ike and other hurricanes and tropical storms, and he cannot identify a single event that has caused a "serious safety environmental threat."  *Id.* at 137-39.  He admits that there has never been a single time where there was any problem shutting Atlantis down.  *Id.* at 57-58.

In addition, contrary to his alarming prediction regarding a future catastrophic failure, Sawyer admits that he has <u>not</u> identified a single error on any Atlantis drawing.  He cannot point to any Atlantis system or any Atlantis component that was designed, fabricated, or installed improperly.  *Id.* at 74.  He does <u>not</u> claim that there has been any significant damage to human health or the environment from Atlantis during the more than four and one half years it has been operating, admits that Atlantis has many redundant valves and systems that can stop the flow of

oil and gas if there ever was a problem, and simply ignores DOI's studied conclusion that Atlantis is safe and should continue to operate. *See id.* at 132, 146. In short, although BP has produced several million pages of documents, including thousands of engineering drawings, Sawyer has been unable to identify a single actual drawing or design document that supports his conclusion that a disaster is imminent.

Finally, as discussed above, Sawyer has no experience applicable to determining the safety risks of an offshore platform. *Id.* at 148. For each of these reasons, Sawyer should not be permitted to testify that a "catastrophic failure [of the Atlantis facility] is virtually certain." This opinion is unreliable under Rule 702 and *Daubert*.

**7.      Sawyer's Testimony is Also Inadmissible Under Rule 403**

Sawyer's testimony should also be excluded because any claimed probative value is substantially outweighed by the danger that the testimony will create unfair prejudice, confuse the issues, mislead the jury, and result in the needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. Sawyer's opinion that Atlantis is "virtually certain" to fail serves no purpose except to mislead and prejudice the jury with thoughts of unrelated incidents like the accident involving Deepwater Horizon. Thus, Sawyer's opinions are being offered to "induc[e] decision on a purely emotional basis," which Rule 403 is designed to prevent. *See Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004-05 (5th Cir. 1998). Because "[e]vidence is . . . particularly prejudicial when . . . the proffered evidence connects a party with a highly charged public issue," *United States v. Sumlin*, 489 F.3d 683, 691-92 (5th Cir. 2007), his opinions should be excluded from this case due to the danger of unfair prejudice.

Further, Sawyer's testimony should be excluded to avoid the needless presentation of cumulative evidence. Both he and Stevick intend to opine on the same issues, and, although neither should be allowed to testify, there is certainly no need for the jury to hear both witnesses.

His testimony should be excluded to avoid wasting the time of the Court and the jury by allowing plaintiffs to present the testimony of two irrelevant and unreliable witnesses on the same issues.  *See United States v. Haynes*, 554 F.2d 231, 234 (5th Cir. 1977) (excluding testimony of additional witnesses offered to testify about the same subject matter as witnesses that had already testified because the testimony would be needlessly cumulative under Rule 403).

**8.     In Addition to All of The Reasons Given Above, Sawyer's "Supplemental" Reports Should Be Excluded Because They Are Untimely**

Plaintiffs' expert reports were due on October 14, 2011, and all discovery was to be completed by December 15, 2011.  Doc. 179; Doc. 144.  On March 1, 2012, plaintiffs submitted a "supplemental report" of Sawyer.  Ex. F, Sawyer Supplement.  While his previous report was confined to analyzing whether Atlantis drawings had as-built labels or the stamps of a professional engineer (PE), this new report presents entirely new opinions regarding the size and safety of Atlantis's pressure safety valves (PSVs).  *E.g.*, Ex. F at Sawyer 001123.  Neither Sawyer's initial report nor his rebuttal report ever mention deficiencies in the design or installation of pressure safety valves or the requirements of 30 C.F.R. 250.803(b)(1)(i).  In fact, in his deposition, Sawyer stated that he had no knowledge that "any specific pipe, tank, valve, or other component part is of improper wall thickness, size, or capacity," or that any component part of the Atlantis facility was designed, built, or installed improperly.  Ex. B, Sawyer Dep. at 70-71, 73.  Sawyer's previous methodology consisted only of examining documents to determine whether they were labeled as-built or stamped by a professional engineer, and his opinions on safety related only to the risk of not having these markings.  *Id.* at 90-91, 98, 119.  Now, over five months after expert reports were due and three months after the close of discovery, Sawyer is attempting to issue entirely new opinions about the safety of the size and installation of Atlantis's PSVs.  Ex. F at Sawyer 001123.

The "duty to supplement created by [Rule 26(e)] does not empower a party to circumvent court-ordered deadlines." *Providence Prop. & Cas. Ins. Co. v. PeopLease Corp.*, No. 4:06-cv-285, 2007 WL 3390011, at *1 (E.D. Tex. Nov. 13, 2007). Thus, after the deadline for disclosing expert reports, a party may not present "entirely new opinion[s] based upon new theories" or methodologies under the guise of a "supplemental report." *GE Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.,* No. SA-03-CA-189, 2004 WL 5495589, at *2 (W.D. Tex. Oct. 8, 2004); *Providence*, 2007 WL 3390011 at *1. "Courts have routinely rejected [this type of] untimely 'supplemental' expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures." *Cooper Tire*, 2008 WL 5104745 at *4.

Sawyer's March 1 report analyzes the findings of an Atlantis safety & operations audit that was issued in January 2010. Ex. F at Sawyer 001120. This document was originally produced by BP in the Deepwater Horizon MDL litigation, but was designated by plaintiffs in this case on September 30, 2011. Ex. G, Sept. 30 Designation Letter. In both correspondence with BP and in their filings with the Court, plaintiffs have always taken the position that discovery from the MDL litigation is considered produced as of the time of its designation in this case. *See, e.g.*, Doc. 162-2 ("Upon designation, such designated documents shall be deemed produced by [BP] as part of discovery in this matter.").[6] In addition, plaintiffs have openly provided their experts with MDL documents before they have been re-produced in this case. *See* Doc. 204 at 12-14. Thus, according to plaintiffs, this document was produced on September 30,

---

[6] *See also* Doc. 204 at 5-6 (arguing that plaintiffs need not await BP's actual production in this case to use discovery from the MDL litigation); Doc. 201-1 (letter from plaintiffs stating they "believe these designations may be used in this matter immediately"); Doc. 201-2 (same); Doc. 206 (emphasizing that plaintiffs have informed BP "multiple times" that they intended to use designated MDL discovery upon designation).

2011, prior to the deadline for serving expert reports.  *See* Doc. 179 (extending deadline for serving expert reports to October 14, 2011).[7]

Plaintiffs cannot show good cause, substantial justification, or that their late disclosures were harmless.  *See GE Capital*, 2004 WL 5495589 at *2 (allowing for the modification of a scheduling order under these conditions).  Plaintiffs had all the relevant information needed to file Sawyer's "supplemental report" by the deadline for serving expert reports, and over 3 months passed between the close of discovery and Sawyer's new disclosure.  As a result, BP will have no opportunity to conduct its own discovery on plaintiffs' new opinions and theories. Sawyer's March 1 report is therefore an improper attempt to use a supplemental report to extend the deadline by which plaintiffs were required to provide all expert opinions and theories.  *See, e.g.*, *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996) ("[Supplemental] disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information.").  Consequently, it should be excluded for both this reason and the reasons given above.[8]

---

[7] At the very least, plaintiffs cannot dispute that Sawyer had all relevant information prior to the close of discovery on December 15, 2011.  Although plaintiffs had the document on which his report is based since at least September 30, it was actually re-produced by BP in this case on November 21, 2011.  Ex. I, Nov. 21, 2011 Production Letter and Attachments.  Further, Sawyer listed the document as having been provided to him in his rebuttal report, which was filed before the discovery deadline.  Ex. C, Sawyer Rebuttal Report at 000445.

[8] Sawyer also submitted a supplemental report on February 17, 2012.  The report contained amended versions of previously produced spreadsheets that were attached to his initial report. Ex. J, Feb. 17 Letter Enclosing Amended Spreadsheets.  The material on which these spreadsheets were based, in particular the books of drawings submitted to MMS for its investigation of Atlantis, was produced to plaintiffs in BP's first wave of production that occurred on May 5, 2011.  Ex. K, May 5 Production Letter.  Plaintiffs and their experts had access to this material for over 10 months prior to serving Sawyer's amendments.  Plaintiffs offered no explanation for this late disclosure.  Consequently, because the report was not served within the deadline for the close of all discovery, it should also be excluded.  *See, e.g.*, *Elliot v. Amadas Indus., Inc.*, 796 F. Supp. 2d 796, 802-03 (S.D. Miss. 2011); *see also Sherrod v. Lingle*,

## CONCLUSION

BP respectfully asks the Court to exclude all the reports and testimony of Michael E. Sawyer.

Dated:  May 4, 2012.

Respectfully submitted,

_/s/ Otway B. Denny_
Otway B. Denny
State Bar No. 05755500
Federal I.D. No. 4120
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

ATTORNEY-IN-CHARGE FOR
BP EXPLORATION & PRODUCTION INC.,
BP AMERICA INC., BP P.L.C., AND BP
PRODUCTS NORTH AMERICA INC.

Of Counsel:
FULBRIGHT & JAWORSKI L.L.P.
    Daniel M. McClure
    State Bar No. 13427400
    Katherine D. Mackillop
    State Bar No. 10288450
    Anne M. Rodgers
    State Bar No. 17133025
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

HAYNES AND BOONE L.L.P.
    Lynne Liberato
    State Bar No. 00000075  Mark
Trachtenberg
    State Bar No. 24008169
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas  77010
Telephone:  (713) 547-2017
Facsimile:  (713) 236-5538

---

223 F.3d 605, 612-13 (7th Cir. 2000) (finding that a scheduling order calling for the completion of all discovery includes the filing of supplemental reports or disclosures).

LISKOW & LEWIS                     SQUIRE SANDERS (US) LLP
   Jonathan A. Hunter                   Damond R. Mace
701 Poydras Street, Suite 5000     4900 Key Tower
New Orleans, Louisiana  70139      127 Public Square
Telephone:  (504) 556-4131         Cleveland, Ohio  44114
Facsimile:  (504) 556-4108         Telephone:  (216) 479-8500

## CERTIFICATE OF CONFERENCE

     I certify that I conferred with counsel for plaintiffs in good faith on May 3, 2012, but we were unable to reach an agreement regarding this motion.


               */s/ Anne M. Rodgers*
               Anne M. Rodgers


## CERTIFICATE OF FILING AND SERVICE

     I certify that on May 4, 2012, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all registered counsel of record.


               */s/ Anne M. Rodgers*
               Anne M. Rodgers